## MARY MULLINS *vs.* PETER BECKER ET AL.

Third Judicial District, New Haven, June Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 2d—decided July 14th, 1931.

*Harry B. Dinerstein,* with whom, on the brief, were *Joseph G. Shapiro, Harry Allison Goldstein* and *Charles S. Brody,* for the appellant (plaintiff).

*Hugh J. Lavery,* for the appellees (defendants).

HAINES, J. The daughter, Florence E. Becker, whose custody is sought by the plaintiff in this action, was born April 17th, 1921, at which time the plaintiff and the defendant Peter Becker were living together at Bridgeport as husband and wife, and they continued

their residence in Bridgeport until January, 1923. On the 17th of that month the plaintiff informed her husband that she desired to spend a few weeks with her mother in New Jersey. He agreed and she went to her mother's home taking the child with her. Up to April 30th, 1923, she wrote letters to her husband that she would return but did not, and he made several visits there, and on the last named date, remained over night at the home of the plaintiff's mother, in an effort to get the plaintiff to return. She refused but allowed the father to take the child back to Bridgeport. At that time she was slightly over two years old, and the father went with her to the home of his mother, one of the defendants, with whom he was then living. The child has resided there continuously since that time, supported by the father and cared for and looked after by the grandmother. From the time she was of school age, the child has attended school in Bridgeport; and at the time this action was heard, was in the fourth grade. She has also attended church and Sunday School for sometime. The grandmother is honored and respected by her neighbors and friends, maintains a good home and is of good moral character. The father, a man of good moral character, lived with his mother until 1929 when he married again and is now employed and lives in Waterbury but continues to support the child and they visit frequently. The plaintiff and her husband were divorced in January, 1927, but no order was made regarding the custody of the child who was then with the father and her paternal grandmother at Bridgeport. The plaintiff was married to her present husband in 1927 and her household in New Jersey now consists of herself, her husband and her mother. These facts from the finding are not contested, save as to the letters and requests to return, and the permission of the plaintiff to the

father to take the child back to Bridgeport with him. As to these facts, there was some conflict of testimony, but ample evidence which the trial court accepted as true, to support them, and the requested corrections of the finding in these respects cannot be granted.

The plaintiff contests the finding of the trial court that from May 1st, 1923, to March 30th, 1930, she made no requests to see the child and contributed nothing to her support; that she has not tried to maintain any contact with her, and has exhibited no interest in her welfare, and that the child is now unacquainted with the plaintiff or any of the plaintiff's family. The evidence is such that we cannot say these facts are not properly supported thereby, and we do not disturb that portion of the finding. None of the facts which the appellant seeks to add to the finding are of sufficient materiality to the real issue in the case, to justify the addition. On March 30th, 1930, when the plaintiff did call to see the child, the latter did not know her. The trial court concluded that "it is for the best interest of the child to remain where she is." This is the controlling issue of fact in cases involving the custody of minor children. In reaching its conclusion, we cannot overlook the fact that the trial court, with the opportunity to observe all the parties and their demeanor, was in a peculiarly favorable position to judge as to what was best for the child. There is nothing in the subordinate facts which does not accord with the conclusion reached, and we must assume in addition that the attitude of the parties concerned, at the trial, also in the judgment of the court, supported this conclusion. Without recourse to the testimony of the child herself in the record, we could reasonably conclude from the finding that her own wish conformed to this view of the court that she should remain where she is.

Under these circumstances, the decision of this question of what is best for the child, is decisive of the case, since the law of this State, conforming to that of others, holds that the legal custody of the child should generally be determined by that consideration. Perhaps the leading case in this State on this question is that of *Kelsey* v. *Green* (1897) 69 Conn. 291, 37 Atl. 679, wherein the rights of a parent to the guardianship and custody of a minor child were fully discussed, as well as the duty of the court upon habeas corpus in awarding the custody of the child. The opinion in that case quoted with approval, a statement of the law contained in Church on Habeas Corpus, § 440, as follows: "While it is the strict legal right of the parents and those standing *in loco parentis,* to have the custody of their infant children as against strangers, a court will not, on habeas corpus, regard this right as controlling, when to do so would imperil the personal safety, the morals, health or happiness of the child in controversy. The right of the father or mother to the custody of their minor children is not an absolute right to be accorded to them under all circumstances. . . . In contests between parents and third persons as to the custody by such parents, the opinion is now almost universal that neither of the parties has any right that can be allowed to militate against the welfare of the infant. The paramount consideration is, what is really demanded by its best interests. And the rule is ordinarily the same in contentions between parents for the possession of children. The court is not bound to award the custody to either contesting party in such controversies, but may, subject to the welfare and best interests of the child, award it to a third party. In contentions of this kind the child has the right to the protection of the court against such misfortunes of its parents." The opinion

also quoted with approval from *Richards* v. *Collins*, 45 N. J. Eq. 283, 287, 17 Atl. 831: "It is the instinct of childhood to attach itself and cling to those who perform towards it the parental office; and they become endeared to it by ministering to its dependence. A parent, by transplanting his offspring into another family and surrendering all care of it for so long that its interests and affection all attach to the adopted home, may thereby seriously impair his right to have back its custody by judicial decree. In controversies over its possession, its welfare will be the paramount consideration in controlling the discretion of the court.

"Though they [the parents] live separate and apart their legal rights as guardians remain equal. But if they cannot agree as to the custody of the infant, and appeal to the courts to determine to whom the custody of the child shall be awarded, their legal rights will be subordinated to the paramount consideration of the welfare of the infant." *Pfeiffer* v. *Pfeiffer* (1923) 99 Conn. 154, 157, 121 Atl. 174.

"It is well established as a general rule that the welfare and best interests of the child are the controlling elements in the determination of all disputes as to the custody; and statutes recognizing a right to the custody of the child in either the father or mother must stand aside where the recognition of such a right would materially interfere with the paramount right of the child to have its welfare considered and conserved by the court. The welfare of the child under the above rule may require that its custody be denied the parent and awarded to others." 46 Corpus Juris, p. 1235; *Whalen* v. *Olmstead*, 61 Conn. 263, 23 Atl. 964; *Morrill* v. *Morrill*, 83 Conn. 479, 489, 77 Atl. 1; *Dunham* v. *Dunham*, 97 Conn. 440, 443, 117 Atl. 504.

It is unnecessary to multiply authorities, and sufficient to say that our decisions are in entire harmony

in sustaining the proposition that it is not only the right but the duty of the court to make the award of custody of a minor child in such a way as will, in the opinion of the court, best serve the welfare and happiness of the child, and this will be done even at the expense of depriving a parent of custody where circumstances warrant.

In the present case the plaintiff, without apparent protest, allowed this child, then a baby of two years, to be taken from her home in New Jersey by the father and brought to the city of its birth in this State. For seven years thereafter the plaintiff has, so far as appears in this record, exhibited little of that interest in her child which the natural instincts of motherhood ordinarily produce. She has, so far as appears, made no attempt to minister to its support, comfort or welfare in any way, and has allowed it to grow to the age of ten years in the family of the father and paternal grandmother, a good home, where the bonds of mutual affection have grown to be strong. To now sever those ties and send this child into another State to attempt to form new associations in a family of strangers would be cruel and unjust to her. Upon the record before us the conclusion of the trial court that the best interests of this child require that she remain where she is, was correct in fact, and the awarding of the custody of the child accordingly, was legally sound and in every way commendable.

There is no error.

In this opinion the other judges concurred.