### IRVING M. WHITNEY v. JEAN B. WHITING

SUPERIOR COURT  NEW LONDON COUNTY  FILE NO. 17734

Memorandum filed August 7, 1947.

*Brown & James,* of Norwich, for the Plaintiff.

*Allyn L. Brown, Jr.,* of Norwich, for the Defendant.

CORNELL, J. In this habeas corpus proceeding the plaintiff (applicant) alleges that his minor daughter is "illegally confined and deprived of her liberty" by the defendant (respondent) at the town of Lisbon in this state.

The facts established by the evidence, in so far as the questions presented for decision are concerned, are these: The child is the issue of plaintiff's marriage with defendant's now deceased sister, whose death occurred in March 1947. When the marriage took place the mother lived in the state of Massachusetts and the plaintiff was in the service. This daughter was born on March 2, 1945, and plaintiff was discharged from the United States Navy on the following November 16. At once, upon the occurrence of that event, he came to Duxbury in Massachusetts, where he stayed overnight with his wife and child, and on the following morning left them both to go to a

recreation camp without, however, informing his wife of his destination or subsequent whereabouts. After seventeen or eighteen days plaintiff returned and endeavored to contact his wife, but by that time she, with the child, had gone to Appanoag in the state of Rhode Island, where she had found living quarters. On April 29, 1946, on a petition preferred by her, the Probate Court of Massachusetts for the county of Plymouth granted the plaintiff's wife a decree nisi of divorce from plaintiff for the reason that "being of sufficient ability the libelee grossly and wantonly neglected to provide for the support of said libellant," which by its terms became absolute upon the expiration of six months next following. The decree contained an order in which it was recited that "in accordance with the stipulation filed" the plaintiff's wife have full and complete control and custody of their child, whose name is Susan Standish, with the right on plaintiff's part to visit her at all reasonable times, and obligated plaintiff to pay his wife $10 per week for the support of the minor daughter, together with other provisions not material to the instant proceeding.

Following the entry of the decree of divorce mentioned, the plaintiff's wife, the mother of the child, took the infant to Lisbon in this state. There she and her sister, the present defendant, together purchased a farm with the intention that it thereafter constitute their permanent place of abode. There, also, were and are still a stepbrother and stepsister to the child Susan. Every opportunity was extended to plaintiff to visit his little daughter here and to be with her, for as extended periods as he reasonably might wish, but despite this he refrained from seeing her until after his former wife's death, which occurred last March. Defendant and her now deceased sister (plaintiff's former wife and mother of the child) had had an understanding between them that in the event of the latter's decease the former would take care of the baby. Plaintiff is not now married but indicates that matrimony is in prospect. If the custody of the child is awarded to him, it is his intention to place her with his married sister, who agrees to care for her in her home at Braintree, Massachusetts, which is some twenty-five miles away from where plaintiff resides at Duxbury. There he would be able to see her only on two occasions in the course of a week. The home where he expects to maintain her is an excellent one, and his sister, who is willing to assume that duty, an estimable person who would, undoubtedly, discharge the duty of caring for the infant with fidelity.

Plaintiff largely bases his claim to the custody of the child on his paternity, his wife to whom her possession had been awarded having since deceased. However, whether the contest be between mother and father (*Pfeiffer* v. *Pfeiffer,* 99 Conn., 154, 157) or between one of the parents and a stranger, the welfare of the child and not the contentions of the parties is the paramount consideration. *Dunham* v. *Dunham,* 97 Conn. 440, 443.

The child has been carefully nurtured and cared for by defendant since the mother's death in healthful and under wholesome surroundings and conditions, during a period throughout which the plaintiff was, at least, very indifferent to her welfare. She is but a little more than two years of age and, during the critical time mentioned, only the solicitude of her own mother and that of the defendant, in the absence of any ministrations made or provided for by plaintiff, may be said to account for her evident fine health. Her stepbrother and stepsister, who are greatly attached to her, help to provide an environment for her, as she increases in perception, which conduces to her contentment and happiness. This salutary influence would be interrupted by removing her from her present surroundings. The thought contained in the following passage from the opinion in *Kelsey* v. *Green,* 69 Conn. 291, 299, is not entirely unapropos: "The relation of parent and child is regarded as not fully characterized by the relative duties of service and support. Nature's provision of mutual affection commonly exists as the incentive to parental and filial duty and the bond of family union. It is the instinct of childhood to attach itself and cling to those who perform towards it the parental office; and they become endeared to it by ministering to its dependence. A parent, by transplanting his offspring into another family and surrendering all care of it for so long a time that its interests and affections all attach to the adopted home, may thereby seriously impair his right to have back its custody by judicial decree."

In the instant case, the effect of granting the writ would not be to restore the child to the home and constant association of her father with the consequent opportunity for the growth of affection between them, but merely to change her from one place to another. Having in mind that the right of a parent to the possession of his child must yield to what is deemed to be the best interests of the child, it is the conclusion that at the present time and under prevailing conditions the latter will best be promoted by not disturbing her present situation, in which she

is an object of endearment and solicitude and in her childish way apparently very happy.

Lest this ruling be misinterpreted in any future litigation, it is not here held that the plaintiff has abandoned his child, nor that he has not. It is unnecessary to go that far, for the instant decision. The holding is that in the contemporary situation of the parties the consequences of any removal of the child from her present environment should, for the best interests of the child, be avoided, and that, for reasons verging on the spiritual, her welfare will be most advanced by leaving her in the atmosphere of affection and solicitude where she now is.

Accordingly, it is found that the child is not illegally confined by defendant. Judgment for defendant will enter.