MARY K. CLAFFEY *v.* EDWARD A. CLAFFEY ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued December 2, 1958—decided January 20, 1959

*Frank T. Healey, Jr.,* with whom, on the brief, were *Patrick Healey* and *James T. Healey,* for the appellants (defendants).

*Arthur M. McDonald,* for the appellee (plaintiff).

DALY, C. J.  This habeas corpus proceeding was instituted by the plaintiff in August, 1955.  In her application for the writ, she claimed that her daughter, Keli Diane Claffey, was unlawfully detained by the defendants, Keli's grandparents, being the parents of the plaintiff's former husband.  Judgment was rendered for the defendants on February 9, 1956 *(Comley, J.)* and modified on April 9, 1956

*(Roberts, J.)*, on June 29, 1956 *(Troland, J.)*, and on July 5, 1957 *(Alcorn, J.)*. By this last modification the custody of Keli was awarded to the plaintiff effective September 1, 1957. The defendants appealed.

Certain corrections in and additions to the finding are sought. We can make none which would materially affect the result. The court found the following facts: The present proceeding is the most recent of a long series involving the custody of Keli. The first was a habeas corpus proceeding, brought by the plaintiff, in which the Superior Court awarded custody to the plaintiff, and, on appeal by the defendants, this court sustained the judgment on February 21, 1949. *Claffey* v. *Claffey*, 135 Conn. 374, 64 A.2d 540. Thereafter, Keli was in the plaintiff's custody for approximately two years. During that period the plaintiff's husband brought an action for divorce on the ground of intolerable cruelty. By his complaint he sought custody of Keli. The plaintiff, the defendant in that action, filed a cross complaint claiming a divorce on the ground of intolerable cruelty, the custody of Keli and an order for her support. On February 8, 1950, the court, by its judgment, which has not been modified, granted the defendant in that action, the plaintiff in the instant case, a divorce, awarded her the custody of Keli and ordered the child's father to contribute towards Keli's support. Thereafter, Keli remained in the plaintiff's custody for about a year. At the end of that period the plaintiff delivered her to the care of the defendants. She did it for the reason that she started to work at 8 a.m. on each work day, she was going to take a public health extension course at the University of Connecticut, and Keli was about to enter kindergarten.

In the instant action, the trial court, by the judgment rendered on February 9, 1956, adjudged that the best interests of Keli required that she "be left in the custody of the defendants . . . at least until such time as the plaintiff's situation becomes more stabilized." On April 9, 1956, the court modified the judgment, granting the plaintiff limited visitation and custody rights. The judgment was again modified on June 29, 1956, and custody of Keli was granted to the plaintiff for a stated limited period of time. The present motion for modification was heard by the trial court on June 28, 1957. No technical considerations were suggested by either the plaintiff or the defendants. Because of the history of the controversy, the court entertained the motion as the parties presented it, namely, on the sole issue whether the circumstances had so changed that the best interests of the child warranted a further modification of the judgment. Two reports, one dated October 27, 1955, and the other January 6, 1956, were made part of the finding. These reports had been considered by the court before the original judgment awarding the custody of Keli to the defendants was rendered on February 9, 1956. It was stated in the first report that the plaintiff then occupied a three-room apartment on the second floor of a house in Thomaston, that a young man who had pleaded guilty to the crime of statutory rape occupied a room on the same floor, and that the plaintiff intended, if custody of Keli was awarded to her, to have Keli live in her apartment. In the other report, it was noted that the immediate environment in which the plaintiff then lived was "not the most favorable one to bring up a child who is about to enter adolescence." No claim was made that the plaintiff was an unfit person to have custody of her daughter.

The plaintiff now lives in Thomaston, where she has conducted nursing courses for "teen-age" girls. She is active on the local library board and in the parent-teacher association and the local Red Cross, and is very highly regarded. She is employed as an industrial nurse in Thomaston and during the 1955 flood served twenty-four hours a day, nursing, and assisting doctors in emergency activities. She moved into her present home in August, 1956, subsequent to her court appearance in this action in June, 1956. She occupies five rooms on the first floor of a ten-room house located in one of the older, well-established areas of Thomaston on a main state highway. The house has all modern conveniences and is on a lot having a frontage of 200 feet, with a front yard about 50 feet in depth and a rear yard about 150 feet in depth. The plaintiff is the sole occupant of the house. The property provides a suitable home for a young child. Keli reached the age of eleven in September, 1957. The plaintiff is employed from 8 a.m. to 4 p.m. five days each week. Her plans provide that Keli should go to and from school by bus, leaving at 8 a.m. and returning about 3 p.m. She has arranged for a reliable woman to supervise Keli, while she, the plaintiff, is at work. The plaintiff is free to care for Keli from 4 p.m. on each working day until 8 a.m. on the next working day and all of each Saturday and Sunday. If Keli is ill, the plaintiff will remain home to care for her or will provide for competent care. The plaintiff's former husband has remarried. The plaintiff may remarry, but has no fixed plans for doing so. She has been socially in the company of the man who is her landlord. The named defendant died after this action was commenced and before the hearing held by the trial court on June 28, 1957. Keli is now super-

vised by her grandmother, the surviving defendant.

The court concluded that under normal circumstances the interests of a little girl will be best served by growing up in the care of her mother; that the plaintiff is a fit person to have custody of Keli; that the plaintiff's home environment has completely changed since the original judgment was entered; that the plaintiff has made adequate plans for the care of Keli; that Keli's best interest dictates that she be in the care of her mother rather than in the care of her grandmother; that vacation from school in the summer offered a desirable period for the adults involved to co-operate in arranging a pleasurable transfer for the child; that the condition contemplated by the original judgment had materialized and "the plaintiff's situation [had] become more stabilized"; and that the plaintiff should have custody of Keli effective September 1, 1957. Although the claim that there has been no change in circumstances justifying this last modification of the judgment is stated in the finding to have been made by the defendants, we construe it as one made by the surviving defendant.

"In an action involving the custody of a child [her] welfare must be the controlling consideration; *Mullins* v. *Becker,* 113 Conn. 526, 529, 155 A. 705; *Hunt* v. *Hunt,* 116 Conn. 701, 702, 163 A. 608; and in determining the question of custody much must be left to the discretion of the trial court. . . . Under the laws of . . . Connecticut . . . a father and mother are joint guardians of a child. *Boardman* v. *Boardman,* 135 Conn. 124, 128, 62 A.2d 521. At least where the controversy is not between the father and the mother, as it was not in this case, the mother has a prior right to custody unless the circumstances are such that to give it to her would not be for the best

interests of the child. *Kelsey* v. *Green,* 69 Conn. 291, 298, 37 A. 679. That, under normal circumstances, the interests of a young child, particularly a little girl, will be best served by growing up in the care of her mother does not admit of question. *Hines* v. *Hines,* 192 Iowa 569, 572, 185 N.W. 91; Keezer, Marriage & Divorce (3d Ed.) § 717." *Claffey* v. *Claffey,* 135 Conn. 374, 377, 64 A.2d 540. We cannot hold that the trial court could not have reasonably reached the conclusions stated above.

There is no error.

In this opinion the other judges concurred.