ROBERT POSEY *v.* ARCHIE YANDELL ET AL.

SUPERIOR COURT    FAIRFIELD COUNTY    FILE No. 126200
AT BRIDGEPORT

Memorandum filed May 3, 1966

*Brody & Brody,* of Bridgeport, for the plaintiff.

*Yudkin & Yudkin,* of Derby, for the defendants.

FITZGERALD, J. This is a habeas corpus proceeding for the custody of a child, Carolyn Posey, born May 30, 1964. The trial to the court was had on April 21, 1966. In addition to the taking of evidence, the court has had the benefit of an investigation report requested by Judge Wall on February 18, 1966, and completed and submitted by Mrs. Lucille Tomanio of the family relations division of this court on March 23, 1966, together with an investigation report under date of March 14, 1966, prepared by Charles F. McHugh, an officer connected with a similar agency in Newport, Rhode Island. The latter investigation, relating solely to the plaintiff, who is presently stationed at the United States Naval War College in Newport, Rhode Island, was conducted at the request of the family relations division of this court because the plaintiff is now a naval resident of that state.

The plaintiff is the father of the child Carolyn, the subject of this litigation, born May 30, 1964, as stated. She is the second child of the plaintiff's marriage to Constance Trew, the first child being Robert, born October 25, 1962. The marriage was entered into in Biloxi, Mississippi, on October 10, 1958, when the plaintiff was in the United States air force. That marriage was terminated on November 26, 1965, by the death of the wife in St. Albans Naval Hospital, Long Island, New York. The fatal illness was meningitis, which had its inception a few years before when the plaintiff was stationed at an army air base in California where he was then living with his wife and child Robert. Carolyn was born after the family had returned east. It was on May 15, 1964, after the two enlistments in the air force had been concluded with an honorable discharge, followed by a brief period of civilian work, that the plaintiff entered the naval service. His present status is that of a training deviceman, third class, serving on the staff at the United States Naval War College in Newport, Rhode Island.

Following the birth of Carolyn on May 30, 1964, the mother, with the two children, lived with her own parents, the Reverend and Mrs. James Trew, the children's maternal grandparents. The Reverend Trew is a Methodist minister. After her death, the boy Robert went to live with the plaintiff in various households where the plaintiff was then residing in Newport, Rhode Island, or nearby areas. Carolyn, upon her mother's death, first went to live in the household of Marilyn Kashian, a young married sister of her mother, and remained there until this aunt was about to have a child of her own. Since February, 1966, to date hereof, the child has been living with the defendants, Archie and Carol Yandell, husband and wife, in their home in Monroe, Connecticut. Mrs. Yandell is also a sister of the

child's mother, and thus she is the child's maternal aunt and Mr. Yandell is an uncle by marriage.

It would appear that the Yandell household is a pleasant and happy one. The Yandells have three children of their own, ranging in ages from eight years to three and one-half years. Mrs. Yandell is active as a teacher in the Monroe school system, and Mr. Yandell is employed on the night shift at a factory in Monroe. There is no question that the Yandells as defendants and the maternal grandparents are fine people and have become extremely devoted to little Carolyn. Stated in a few words, it is their earnest belief that the interests of the child will be served best by the child's remaining where she is. It is their position that the plaintiff's primary interest is in the boy Robert. The fact that the plaintiff has not made efforts to see the child Carolyn more frequently than he has to date is an aspect which weighs with them.

The plaintiff is thirty-three years of age. On February 21, 1966, he married Charlotte Branch, age twenty-two years, a former member of the women's division of the navy. They occupy rented quarters in a residential section of Newport, consisting of five large rooms having a monthly rental of $120. The plaintiff's former record of service in the army and his present record in the navy are not only commendable but outstanding. The McHugh report of March 14, 1966, which goes into this aspect in some detail and the sources of which are not open to challenge, justifies a finding that the plaintiff has served and is serving in the armed forces with distinction.

In a proceeding of this character, involving the custody of a child, it is axiomatic that the welfare of the child must be the controlling consideration. *Claffey* v. *Claffey*, 135 Conn. 374, 377, and cases

cited; restated, *Claffey* v. *Claffey,* 146 Conn. 104, 109; see also *Stiwinter* v. *Roberts,* 153 Conn. 240, and the excellent and comprehensive memorandum of the trial court in that case *(Klau, J.),* contained in A-449 Rec. & Briefs 254 et seq.

Here, the controversy is not between the parents of the child but between the plaintiff father and the maternal aunt and her husband, the latter aided and abetted by the maternal grandparents. Under the law, a father and a mother are joint guardians of a child. *Boardman* v. *Boardman,* 135 Conn. 124, 128. Upon the death of the mother, the plaintiff became the sole guardian of the child Carolyn. It follows that the plaintiff has a prior right to custody unless the circumstances are such that to give it to him would not be for the best interests of the child. *Claffey* cases, supra.

*Whitney* v. *Whiting,* 15 Conn. Sup. 129, is relied upon by the defendants. That case also involved the question of the custody of a child in a contest between a plaintiff father and a defendant maternal aunt. The elements of neglect found in that case on the part of the plaintiff father apparently controlled the result reached by the trial court *(Cornell, J.)* in favor of the defendant aunt. In the proceeding at bar, the court does not find such neglect. This is so notwithstanding the fact that the plaintiff did not visit the child with frequency.

Since the plaintiff's remarriage on February 21, 1966, to a young woman of excellent character and fine appearance, circumstances have changed. The plaintiff now has a place called home with a wife who is devoted to him and to his older child, Robert, and who is also willing to act as mother to the child Carolyn. His present home in Newport, Rhode Island, is a good one and he can afford to maintain that home, living as a family with his present wife

and both of his children. In so doing, the little brother Robert will be reunited with Carolyn, his little sister.

The plaintiff's record as a man and as a member of the armed forces, notwithstanding the suggestion that the latter years of his marriage to Carolyn's mother were not too happy (she was an ill woman), weighs with the court. Lastly, it is considered that the best interests of Carolyn from an ultimate standpoint will be best served by living in the same household with her father and brother, and particularly so when the present wife of the plaintiff is willing to take on this responsibility. She does not work in any outside capacity and states that she will make a full-time job of this undertaking.

Judgment may enter directing the defendants to deliver the custody of the child, Carolyn Posey, to the plaintiff, and for the plaintiff to continue to have the custody of said child until otherwise ordered by a court of competent jurisdiction, with the right, however, of reasonable visitation in the defendants to visit the child at reasonable times. Since the child is of tender years, it is suggested, but not ordered, that at the outset the plaintiff have the child live with him for a few days at a time until she becomes adjusted to the new household.

Counsel for the plaintiff will prepare a judgment file based on that of *Stiwinter* v. *Roberts,* 153 Conn. 240, as contained in A-449 Rec. & Briefs, back of p. 256 and on p. 257.