## Elwyn Simons *v.* Mary Fitch Simons

House, C. J., Loiselle, Bogdanski, Longo and Barber, Js.

Argued November 9, 1976—decision released February 8, 1977

*Dennis L. Pieragostini,* with whom was *Max H. Schwartz,* for the appellant (defendant).

*R. William Bohonnon,* for the appellee (plaintiff).

Loiselle, J. The plaintiff and the defendant were divorced on November 17, 1972. The defendant mother was awarded custody of her two children: Katherine, born in 1960, the issue of a prior marriage (adopted by the plaintiff in 1965), and David, born in 1965 of the marriage of the parties. On June 7, 1974, on the plaintiff's motion a state trial referee, acting as a court under General

Statutes § 52-434a, awarded custody of David to the plaintiff father, with rights of visitation in the mother. The defendant appealed from the decision of the referee.

Section 46-42 of the General Statutes gives courts broad authority to modify custody orders: "[I]n any controversy before the superior court as to the custody or care of minor children, the court may at any time make or modify any proper order relative to custody, care, education, visitation and support of such children and may assign the custody of any of such children to either parent, or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference. . . ."

A rule which has been followed in this state limits this broad statutory authority in the interests of respecting the finality of judgments. "[B]efore an order as to custody . . . of children may be modified there must have been a material change of circumstances after the order was issued." *Cleveland* v. *Cleveland,* 165 Conn. 95, 100, 328 A.2d 691; *Krasnow* v. *Krasnow,* 140 Conn. 254, 99 A.2d 104. According to this rule, circumstances existing prior to or at the time of the initial custody order are not grounds for a change of custody unless since that order there has been a material change in circumstances which puts into question the propriety of continuing the existing custody order. *Krasnow* v. *Krasnow,* supra. If such a material

change is found, the court may then consider past conduct as it bears on the present character of a parent and the suitability of that parent as custodian of the child. *Sullivan* v. *Sullivan,* 141 Conn. 235, 240, 104 A.2d 898.

The defendant has briefed and pressed claims that the court, in changing the custody award, erred in three respects: in its finding of facts, in finding that a material change in circumstances had occurred, and in finding that the welfare of the child David would best be served by awarding custody to his father.

Certain findings were attacked as found without evidence. The plaintiff has printed no evidence in his brief to support these findings and they are, therefore, stricken. Other portions of the draft finding are claimed to be material facts which were admitted or undisputed. These are based on testimony by the defendant herself, and in some cases, on hearsay testimony of others as to what the defendant said. The credibility of such testimony was for the court to determine, and we cannot say it was error to refuse to include these in the finding, except for the draft finding that the mother desires to retain custody, which is undisputed and material and therefore added to the finding.

As corrected, the finding includes the following facts which occurred after the initial award of custody to the defendant was made: The father remarried within two weeks of the divorce, taking David to attend the wedding on a regular visitation day, without informing the mother that David would attend the wedding, which increased the stress and pressure on the mother. In July, 1973, a male friend was seen with the mother alone at her home

in the evening and early morning. From November, 1973, up to the date of the hearing, David was under treatment by a psychiatric social worker. Beginning in 1973 the defendant was also under psychiatric treatment, and her psychological health showed a marked improvement. Some time during the year before the hearing, the plaintiff and his second wife had a child. During this year the father taped conversations with David concerning David's life with his mother revealing incidents of erratic behavior on her part. In April, 1974, police personnel responding to the defendant's complaint came to her home, where they found her incoherent and loud. She was arguing with her parents about her daughter's staying with them, and the police caused the girl to go home with her grandparents.

These facts cannot be said to show a "material change of circumstances" since the first custody award was made. The remarriage of the noncustodial parent by itself has been held not to justify opening the question of custody. *Antedomenico* v. *Antedomenico,* 142 Conn. 558, 115 A.2d 659. The fact that treatment is begun, when the problem being treated may have arisen earlier, cannot be held to justify opening custody, or the rule would deter the initiation of needed treatment. The family quarrel investigated by the police and the taping of conversations by the father are mere incidents, not changes in circumstances. One overnight visit by a member of the opposite sex, when it is not shown the child was even present in the home, does not constitute a change in circumstances affecting the welfare of a child.

The subordinate facts in the finding as corrected do not support the conclusion of a material change in circumstances since the divorce decree.

There are, however, other facts which were found
by the court which argue that custody should be
changed. These facts are either given without dates,
or occurred over a period beginning before the ini-
tial custody order. While the divorce was pending
and for some time after the decree, the defendant
was under emotional stress. Between June 28, 1971,
and April 3, 1974, the police, in response to the
defendant's complaints, were at her home on
numerous occasions. She had been regularly seeing
a psychiatrist in regard to her emotional problems
during the three years preceding the hearing.
During this period she drank excessively. She could
drink a quart of bourbon nightly. She drank in the
presence of her children. She had many conflicts
with her parents. The children's pediatrician visited
the defendant's home several times and found it to
be completely unattended. He was consulted by
the defendant's parents and felt a moral obligation
to report what he considered instances of neglect
of the children. A number of individuals who had
been in the defendant's home found it dirty and
untidy. Both children spent a great deal of time
with their grandparents, where they were well cared
for; the daughter reported she was, in effect, living
with her grandparents.

The defendant argues that her emotional distress,
her use of alcohol, her conflicts with her parents,
and the police activity at her home all predate the
court's initial custody award, and thus cannot sup-
port an opening of the question of custody of the
child. It is true that the police activity and the
conflicts between the defendant and her parents
cannot support an opening of custody because they
are not relevant to the welfare of the child. Anyone
may call the police with a complaint or may quarrel

with relatives and still be a fit custodian for a minor. The defendant's emotional problems, the condition of her home, her drinking and leaving her home unattended, however, are not irrelevant to the welfare of the child.[1] There is no showing that the court which entered the original custody order considered any evidence relating to these matters. Thus the interest in the finality of judgments, which supports the common-law rule requiring a material change in circumstances to modify custody, must be balanced against the best interests of the child. On the national scene, courts are divided in their views of the relative weights accorded to these interests. Other jurisdictions have permitted custody to be modified, in the best interests of the child, either because of changes since the first decree or because of facts which may have existed earlier but were not known to the court which made the prior custody award. Clark, Domestic Relations § 17.7, p. 599; annot., 9 A.L.R.2d 623.

The rule requiring a change in circumstances was first discussed by this court in *Freund* v. *Burns,* 131 Conn. 380, 40 A.2d 754, in connection with modification of a custody award by a New York court. *Freund* held only that such a change was required by New York law. In *Krasnow* v. *Krasnow,* 140 Conn. 254, 99 A.2d 104, this court found no abuse of discretion in the trial court's refusal to allow a father to open the question of custody by showing he had previously made false representations as to

---

[1] The defendant claims that there is nothing in the findings showing that these factors had a direct relationship to the welfare of the child (that David was adversely affected by them). Findings to that effect were not necessary; a relationship may logically be inferred, although such an inference may be rebutted by a showing that the child is totally unaffected by these factors.

the mother's fitness to have custody. "What the plaintiff was really asking the court to do was to reconsider a matter already disposed of and concerning which no new conditions had since occurred." Id., p. 260. Nothing in that opinion, however, suggests that the mother was truly unfit to have custody. In *Sullivan* v. *Sullivan*, 141 Conn. 235, 240, 104 A.2d 898, the rule requiring a change is stated as a rule of Connecticut law, and *Freund* is cited as the authority, but the holding of *Sullivan* is that custody could be opened because a change had occurred. Since that time the rule has been cited in numerous cases. *Murphy* v. *Murphy*, 143 Conn. 600, 124 A.2d 891; *Tippin* v. *Tippin*, 148 Conn. 1, 3, 166 A.2d 448; *Adamsen* v. *Adamsen*, 151 Conn. 172, 178, 195 A.2d 418; *Cleveland* v. *Cleveland*, 161 Conn. 452, 459, 289 A.2d 909; *Cleveland* v. *Cleveland*, 165 Conn. 95, 100, 328 A.2d 691; *Raymond* v. *Raymond*, 165 Conn. 735, 737, 345 A.2d 48. In none of the opinions in these cases, however, does it appear that the rule prevented a change of custody where the best interests of the child required such a change.

It is not uncommon for the parties in a dissolution of marriage to focus their attention primarily on the termination of the marriage relationship. Unfortunately, under this pressure some custody awards may be made which are not in the best interests of the child. This court has always held that the paramount consideration in custody matters is the welfare of the child. *Tippin* v. *Tippin*, supra, 4; *Murphy* v. *Murphy*, supra, 603; *Krasnow* v. *Krasnow*, supra; *Mullins* v. *Becker*, 113 Conn. 526, 528, 155 A. 705; *Dunham* v. *Dunham*, 97 Conn. 440, 443, 117 A. 504. In *Antedomenico* v. *Antedomenico*, 142 Conn. 558, 115 A.2d 659, it was held

that the interests of the child were so predominant that even though the father had established a good home and was a fit parent, the child's interests were better served by remaining with the maternal grandparents where he had been well cared for. The court, in determining custody, has a "duty to use its judgment, regardless of the allegations or prayers of the parents." *Morrill* v. *Morrill,* 83 Conn. 479, 489, 77 A. 1. The fact that factors which affect the welfare of the child have not previously been revealed to the court at the time of the original order should not prevent it from doing its duty by the child when those factors become known to it.

The facts the court found, which were relevant to the child's welfare and are not shown to have been before the court which made the initial custody award,[2] are sufficient to warrant opening the question of custody. The only remaining question is whether the court erred in deciding that the best interests of the child would be served by awarding custody to the plaintiff father.

It is settled that the determination of the custody of a minor child rests largely in the discretion of the trial court, and its decision cannot be overridden unless it abused its discretion. *Pfeiffer* v. *Pfeiffer,* 99 Conn. 154, 157, 121 A. 174; *Morrill* v. *Morrill,* supra, 491. In making its determination, the court had before it the following additional evidence: the family relations officer, a college graduate experienced in her work, interviewed several people who observed a warm, affectionate relationship between

---

[2] There is a reference in the plaintiff's brief to a family relations report made at the time of the initial custody order in this case, but the defendant does not allege that the report included information adverse to her claim for custody.

the child, his father and the new wife, and who believed the father's home offered a superior environment. She recommended custody in the father in a report dated November 19, 1973. The children's pediatrician recommended custody in the father. The attorney for the child, however, who conferred with twelve different individuals acquainted with the case, in a report dated May 9, 1974, recommended custody in the defendant. A psychiatric social worker with distinguished credentials, who had been treating David for six months, appeared at the hearing and stated that it was her professional opinion that it was not in David's best interests to be placed in a home where his stepmother had recently had a baby of her own. The court also talked to David.

The trial court had the advantage of observing the parties, the child and the witnesses. There was evidence on which it could have based an award of custody to either parent. "[W]e are bound to bear in mind that the authority to exercise the judicial discretion . . . is not conferred upon this court, but upon the trial court, and that we are not privileged to usurp that authority or to substitute ourselves for the trial court in its exercise. A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses clear abuse of discretion can warrant our interference." *Morrill* v. *Morrill*, 83 Conn. 479, 491, 77 A. 1.

The defendant complains that there is a presumption in favor of custody in the mother, citing *Claffey* v. *Claffey*, 146 Conn. 104, 148 A.2d 140, and *Claffey* v. *Claffey*, 135 Conn. 374, 64 A.2d 540.

Those cases did not involve a choice between two parents as custodian, but between the mother and the father's parents.

The defendant also complains that there is a presumption against modification of a custody order, citing *Freund* v. *Burns,* 131 Conn. 380, 40 A.2d 754. There is no language in the case regarding presumptions.

Both the claimed presumption favoring the mother and the claimed presumption against modification, insofar as they may exist, are merely elements in the larger question of what is in the best interests of the child. If the child's best interests require for him to have a change in custody, it must be made; if they require for him to be placed in the custody of the father rather than the mother, that too must follow. There was evidence from which the court could have found that a change to the father's custody was in David's best interests; thus the conclusion is adequately supported by the finding.

There is no error.

In this opinion the other judges concurred.