[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION de DEFENDANT'S MOTION FOR CUSTODY (#145)
The parties' marriage was dissolved on September 7, 1989 after an uncontested hearing, (Kulawiz, J.). Each party was CT Page 7213 then represented by counsel. An agreement was recited orally for the record which included the provision that custody of three minor children (Jason, born July 30, 1982, Kristin, born March 1, 1985 and John III, born September 4, 1987) be granted to the plaintiff with reasonable visitation granted to the defendant off premises, including alternate weekend overnights, Tuesday and Thursday evenings weekly and each parent to have 16 consecutive days summer vacation with the children. The defendant, who was still living at the family home, agreed to vacate by October 15, 1989, that he would not have his friend Laura Conigliaro in the house in the interim, and that the house was to be sold. The defendant vacated the marital home as agreed after first living at his sister's for a short period, the defendant lived with Mrs. Conigliaro and her children for nine months, became engaged to her, broke the engagement and ended the relationship. The house was eventually lost to foreclosure. In February, 1991 the plaintiff and children moved into a house owned and occupied by Fred Lester, a self-employed contractor. The plaintiff established a day care business at Lester's house, the same occupation she had engaged in prior to the dissolution. When the present hearing began on June 10, 1993 she was providing day care for two children full time and four children part time. Further, the plaintiff testified that she was planning to move to Middleburg, Florida to a home Mr. Lester bought the previous Friday.
Mrs. Eileen Baukus, one of the defendant's six sisters, presently a kindergarten teacher, but with 20 years experience in day care, assisted the plaintiff in obtaining her day care license. Mrs. Baukus also visited with the children monthly and remained in contact with the plaintiff for a couple years after the dissolution. She agreed with the plaintiff's contention that Jason needed counseling. She testified that she never saw the defendant strike any of his children. She also observed that the plaintiff was bitter towards the defendant.
The defendant's father, Dr. John E. Keet, of Fort Myers, Florida praised his son as a marvelous father. The defendant's mother also endorsed her son's parenting, describing many activities with the children and their happiness displayed while visiting at their Rhode Island summer home.
Mrs. Mary Lou Erarida, of Avon, Connecticut, Mrs. Christine Vicas, of Goshen, Connecticut and Mrs. Nancy Welsh, of Lakeville, Connecticut, sisters of the defendant, all affirmed CT Page 7214 their brother's virtues as a father, mostly based on observations during family gatherings.
The court ordered a custody visitation study which was completed on November 23, 1992 (Plaintiff's Exhibit F). An update was ordered and completed on June 8, 1993 (Plaintiff's Exhibit G). The Family Relations Counselor recommended no change in custody and, in the update, did address the visitation in light of the move to Florida then being considered by the plaintiff.
The following excerpt from Exhibit F accurately summarizes the issues:
 "This matter involves two parents who both clearly love their children and are desirous of being active participants in their lives. The primary problem appears to be the inability of each parent to put aside their problems with each other in favor of focusing upon how his/her own behavior needs to be modified in order to provide the children with the best care.
 While mother seems to have superior parenting skills, she needs to attempt to allow a relationship between the children and father to develop without her own feelings affecting the children's perception of their father. This can best be accomplished by having third parties, i.e., the therapist and/or school counselors act as intermediaries for the children's concerns regarding their father.
 Although father strongly denies any physically abusive behavior with the children, their various accounts of his behavior appear credible and lead to at least a suspicion that father may need some help with parenting skills and anger management techniques."
The plaintiff refused to credit the defendant with stopping his car to enter a smoking residence to lead an elderly person to safety, only blaming him for causing one of the children to cry. Although he immediately returned to the car to tend to his children, the mother refused to cast the episode in a positive light to enable their children to be proud of their father. CT Page 7215
The father, on the other hand, seems quite rigid in his handling of his children. This is also detailed in the Family Relations Report.
On several occasions the mother was critical of the manner in which the older boy carried on a phone conversation, pointing out that the boy kept a sports book near the phone to have a topic to discuss. This criticism is unwarranted for the point of these phone conversations is to allow the child to talk about anything he wishes, including batting averages. The mother should not have concern, and should encourage contact between the father and their children.
The order contained in the judgment was made in the best interests of the children. The defendant has not challenged it even though the original order was made by agreement. The court does not find that other facts relevant to the children's welfare at the time of the judgment were overlooked or not revealed, Simons v. Simons, 172 Conn. 341,347.
In order to entertain a claim for change of custody, this court must first find that a material change of circumstances has occurred. Hall v. Hall, 186 Conn. 118,121. The plaintiff's relocation to and residence with Mr. Fred Lester and her subsequent move to Middleburg, Florida to continue her residence with Mr. Lester furnish sufficient basis to find a change in circumstances sufficient to allow examination of the original custody order.
Renee Vitale, a psychotherapist, was seeing the children from June 10, 1992 until the children moved to Florida. Although the defendant was to undergo a psychological evaluation, the therapist believed he was at her office for counseling. When the defendant cancelled his October 5, 1992 appointment, the therapist drew an adverse inference from his apparent refusal to continue counseling. The evaluation was never obtained. Ms. Vitale supported the plaintiff as a consistent parent. Unfortunately, the therapist found nothing of redeeming value in the defendant's character when she related the March 1993 house fire episode, stating that the defendant stopped to see if he could help. The court found this witness to be biased and lacking objectivity.
The court must be furnished with sufficient evidence to CT Page 7216 support the claim that allowing the children to remain with the custodial parent is not in their best interest. The plaintiff has always been able to give the day to day care necessary to foster the children's growth. The one recurring theme that troubles the court is the plaintiff's persistent effort to undermine the defendant's relationship with the children.Seymour v. Seymour, 180 Conn. 705, 711-713. Alone, the court finds this fault too slender a reason to remove the mother as custodial parent.
There is no question that the parents need to see themselves as others see them, for they both are blind to their own shortcomings.[1] The Seymour decision approved of the concept that unwillingness to cooperate with the non-custodial parent or in otherwise frustrating visitation was a factor upon which a custody award could be based, Id. p. 713. Although the plaintiff has been reluctant to cooperate, her behavior has not been, with one exception that did lead to a contempt finding[2], so outrageous to force the court to change custody to cure the deprivation of visitation.
On the other hand, the defendant has appeared to be more resistant to counseling. The plaintiff has continued in counseling, although the results have not been dramatic in reduction of her bitterness.
On August 9, 1993, this court entered an order for visitation over a two week period for all 3 children, plus two extra days allowed for travel. Child support was suspended for the two week period of vacation-visitation to recognize the travel expense to be incurred by the defendant. Said order is made permanent.
In addition, the defendant is to be permitted to telephone his children twice weekly, without any interference, monitoring, recording or objection whatsoever from the plaintiff, Mr. Lester or the plaintiff's mother. If the defendant visits Florida at any other time during the year (e.g. Christmas or school vacations) the plaintiff shall permit visitation as is appropriate to the circumstances. So ordered.
The attorney appointed to represent the children has rendered services which have a value far beyond the $2,000.00 she has agreed to accept. Each party is ordered to pay $1,000.00 with final due date of December 31, 1994. CT Page 7217
No change is ordered in the custody order.
/s/ Harrigan, J. ---------------- HARRIGAN