[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a fully contested dissolution of a marriage between the parties which occurred on October 17, 1970 at Danbury, Connecticut. The plaintiff has resided continuously in this jurisdiction at least twelve (12) months next before the filing of the complaint. Three minor children were born of this union: Chad E. Woodruff, May 23, 1979; Carley S. Woodruff and Ashley L. Woodruff, twin girls born on March 31, 1981. No other minor children have been born to the plaintiff since the date of the marriage. No federal, state, municipal agency, or public or private trust or foundation is contributing to the support of either party. The court finds the marriage has broken down irretrievably and a decree may, enter on the grounds of irretrievable breakdown.
The marriage was a culmination of a high school romance and occurred after the defendant returned from service in the army. The plaintiff apparently loved the defendant when she married him, but the defendant asserts that he married the plaintiff only because she waited for him while he was in the service and was true to him during that period. Approximately six months after the marriage, the plaintiff's mother died. She was survived by the plaintiff and two younger sisters. Her father predeceased the mother by a number of years. The parties moved into the family home with the express purpose of parenting the two younger sisters. Shortly thereafter, the defendant left the plaintiff for the first time because he was unable or unwilling to accept the parenting situation of young adults in which he suddenly found himself. He did return to the marital domicile, however.
Shortly thereafter, the parties purchased the family dwelling, having acquired all the right, title and interest in and to the premises from the younger sisters. Subsequently, they sold the property and realized an appreciated profit of about CT Page 12479 $50,000. With these funds and mortgage proceeds, they purchased their home at 3A Boyce Road in Danbury in 1978. That property was refinanced on two different occasions; once in the early 1980's, and a second time in the later 1980's. In addition thereto, the property is encumbered with a second mortgage. The parties believe that the fair market value of that property as of this time is two hundred fifty-five thousand ($255,000) dollars and two hundred sixty-five thousand ($265,000) dollars respectively. The first mortgage is either two hundred twenty-nine thousand ($229,000) dollars or two hundred twenty-eight thousand ($228,000) dollars. There is no equity in the property which is currently under foreclosure and there is no hope whatsoever of redemption. Its value as an asset is zero (0). The plaintiff has a baccalaureate degree from Western Connecticut State University and has pursued additional studies at that University, at Fairfield University and at St. Joseph College in Hartford, Connecticut. Her academic achievement is described as BS + 30. She began teaching in New Fairfield and continues to teach there to this day after some twenty-two (22) years. Shortly after she began her career, the defendant returned to school on a full-time basis and completed three years. He does not have a degree.
The plaintiff is forty-four (44) years old and the defendant forty-eight (48). Each appears to be in relatively good health, although the defendant complains of hypertension and some musculoskeletal problems. It is her contention that the marriage broke down because of his consistent absences from the home at night, his failure to participate in the children's activities, his general lack of any significant concern for her and several extramarital affairs. He responds that he was unable to satisfy her needs, both affectionate and physical. He talked of sexual incompatibility and his inability to resolve that problem. However, this lack of ability or lack of adequacy was neither a deterrent nor a hindrance in the pursuit of at least four affairs during the course of the marriage. He asserts and objects with what might be called some pseudo self-righteous indignation to her constant habit of reminding him of his infidelity. He has denied that he did not participate in the children's activities or attend them, or take them to the various practices for events in which most children are involved.
The plaintiff says that the defendant was the financial manager of the family, that when she was paid she would withhold one or two hundred ($100 or $200) dollars from her check and deposit the balance in the family checking account. The defendant CT Page 12480 contradicts this by responding that all family activities in the financial world were the product of joint well informed mutual decisions. He has been employed by several banks and a private mortgage company. Over the years, he made well over one hundred thousand ($100,000) dollars several times while her salary gradually escalated through the forty thousand ($40,000) dollar range, until at this time when she is now making fifty-two thousand ($52,000) dollars per year. She is a participant in a teacher's retirement fund and he has no retirement benefits whatsoever.
It seems that from day one and over the years while these parties were enjoying very substantial productive income years, they developed a life style of spending and committing themselves to more debt than they could possibly satisfy. Expensive vehicles were leased and investments were made. In the late 1980's their financial successes became financial failures and, in 1993, they declared and were discharged in bankruptcy under Chapter 7. In the years since the discharge in bankruptcy, they have managed to acquire an additional eight thousand four hundred ($8,400) dollars of debt. The defendant in 1992 earned seventy-five thousand ($75,000) dollars; in 1993 he earned sixty-five thousand ($65,000); and this year, the year of the dissolution, he claims to have earned no more than thirty-five thousand ($35,000) to date. The plaintiff must relocate when the foreclosure judgment becomes final and the defendant is living in a one-bedroom rented condominium. He anticipates relocating in the same complex in a three-bedroom condominium on or shortly after the first of December of this year.
The three children born of this marriage, from the evidence this court has heard, might well be said to be totally out of control and at extreme risk. The plaintiff appears to have been the disciplinarian in the family and the defendant has criticized the exercise of her judgment of imposing sanctions by taking things from the children temporarily. These sanctions are said to be overly active or excessive. She is also accused of physical encounters with them and they with her or with physical objects in the home. The defendant claims to be a very calm rationale nonviolent disciplinarian. The children clearly recognize the style variation and have been quick and successful in manipulating their parents. Chad left his mother's home in August to reside with his father and the twins left within the last three weeks, also residing with their father. All are sexually active and the specter of pregnancy as of the moment has avoided CT Page 12481 reality.
Resolving the property rights of the parties, where there are virtually no assets to divide, and fashioning financial orders is highly difficult. The custody issue, however, seemingly defies resolution. The entire family is need of intense therapy before each is totally alienated from one or the other parent at any particular time and before they simply become completely lost children. Indeed, if either of the parties loves the children, as each professes to do, and each acknowledges the other does, they must ignore their bitter differences with respect to those children by mutually encouraging the restoration of a healthy parent/child relationship and exercising their joint best efforts to save those children.
A custody order in this case mandates the resolution of several extremely significant problems. The plaintiff has demanded sole custody, the defendant urges the court to order joint custody, and counsel for the children would join in that recommendation of joint custody.[1] The children's ability to manipulate their parents and their sexual promiscuity contributes substantially to that difficulty. The adverse effects of the lack of assets and the indefinite housing arrangements with the parties all contribute to this seeming enigma. The evidence clearly indicates that the children resent the plaintiff's methodology in discipline and certainly prefer the defendant's rather relaxed rules of conduct.
This court is not prepared to say that either parent is the better parent. There are positives and negatives attributable to both. In making or modifying any order with respect to custody or visitation, the court should be guided by the best interests of the child or children. See Simons v. Simons, 172 Conn. 341;Krasnow v. Krasnow, 140 Conn. 254, 260; Sec. 46b-56 of the General Statutes. The preference of the children if he or she is of sufficient age and capable of forming an intelligent preference is also a standard to be considered. The rights, wishes and desires of the parents are a factor. However, that factor must be subordinated to the best interests standard. SeeRidgeway v. Ridgeway, 180 Conn. 533, 541; Palmieri v. Palmieri,171 Conn. 289, 290. The statutory presumption that joint custody is in the best interests of the child or children cannot be utilized because our statutory requisites are not satisfied. See Sec. 46b-56a(b). The last ingredient in this mix, as it were, is at least an inferential threat that if the children are ordered to CT Page 12482 reside with the plaintiff that they will in fact run away. This court does not accept that premise as realistic, cogent or valid. Nevertheless, it cannot be ignored that the children and the defendant are very comfortable with each other.
Having considered the statutory criteria, the cases that address those criteria and the factual predicate of this particular case, this court is convinced that perhaps the last hope of saving these children is an order of joint custody which may well exceed the statutory authorization. It is so ordered, however, and the court declines to designate a residential parent at this time. The parties and the children have been and are being ordered to participate in psychological counseling, such medical treatment as may be necessary, and such therapy for all as may be appropriate. On or before June 1 of 1995, the parties are to submit a detailed report to the Family Services Supervisor of this Judicial District from the therapist or therapists of the progress and results of the therapy to that point and a recommendation of residential placement if indeed the therapist, psychologist or physician is able to and comfortable to offer such an opinion.
Each of the parties is awarded each and every right consistent with an order of joint custody including without limitation reasonable, liberal and flexible rights of visitation with the children. That award, in addition to such times or periods as may be mutually agreed, shall include MINIMUM
alternate weekends for the then nonresidential parent from 10:00 a.m. on Saturday until 8:00 p. m. on Sunday evening, with the exception of weekends whereon a federal holiday is celebrated on a Monday in which instance visitation is extended until 8:00 p. m. on those Monday evenings. During the summer vacation and school holidays, weekend visitation will extend from 6:00 p. m. in the evening on Thursday until 8:00 p. m. in the evening on Sunday, with the same exception with respect to Monday federal holidays when visitation shall extend to 8:00 p. m. on Monday evening. Each child shall spend one evening each week with the plaintiff, if not then the residential parent, from 5:00 p. m. until 7:30 p. m. This aspect of the order contemplates individual visitation which, however, may be amended to include two or all of the children during the same period of visitation provided each child and/or all the children and the mother agree. With respect to summer vacations, the plaintiff, if not then the residential parent, is awarded a period of three weeks vacation with the children, at least two of which shall be sequential. For starting CT Page 12483 purposes of times or weeks, each week shall begin at 8:00 a.m. on Monday following the then non-residential parent's weekend with the children and continue until 8:00 a.m. on the Monday morning following. The ordinary weekend visitation time as it applies will be included in the week and no additional or makeup visitation will be provided. The then nonresidential parent shall provide the then residential parent thirty (30) days written notice with respect to visitation periods during which time he/she intends to exercise his/her visitation rights.
In satisfying these orders, each of the parents is directed to consider the children's activities, including sporting events and school events in which all children are ordinarily participants. To clarify, if necessary, in the event the children or any of them depart from their current residence with the defendant prior to June 1, 1995, then the orders of visitation awarded to the plaintiff shall reverse for that child or children and be the visitation schedule for the defendant.
The children shall spend Christmas Eve with the plaintiff; Christmas Day with the defendant. The same sharing arrangement will exist on Thanksgiving and Easter — a half day with each parent. If they cannot agree, mornings will be spent with the plaintiff, evenings with the defendant and 3:00 p. m. will be the time that custody is exchanged. The plaintiff is awarded Mother's Day each year and the defendant Father's Day of each year. Each of the parties is awarded access to the children on their respective birthdays. Any expense involved in exercising visitation rights shall be borne by the party exercising those rights.
It is further ordered that neither party will leave any child or any of the children during the hours of 8:00 in the evening until 7:00 the following morning without adequate responsible adult supervision. Neither party shall permit any unrelated male in the case of the plaintiff, or female in the case of the defendant to remain in their respective residences overnight until and unless they remarry. Each of the parties is ordered to refrain from denigrating or disparaging the other in the presence of the children and this order contemplates that no negative remarks or inferences will be expressed or created in the presence of any of them.
Each of the parties is awarded reasonable telephone access to the children or any one of them. The parties are further ordered CT Page 12484 to keep each other advised of any significant events in the lives of a child or the children, including health, education, social, athletic, artistic, or any event of any interest whatsoever that the children or any of them as soon as that information is known to one parent or as soon as such information or knowledge can be reasonably communicated.
The court declines to award either party alimony and in so doing the court has considered the statutory requisites set forth in Sec. 46b-82 and the cases which address those criteria. SeeDubicki v. Dubicki, 186 Conn. 709, 714-15; citing therein McPheev. McPhee, 186 Conn. 167, 171 n. 3. The court is unable to find a continuing duty to support either party by the other. See Dubickiv. Dubicki, supra, 714 n. 2; Wood v. Wood, 165 Conn. 777, 784.
The statutory measure of child support directs the court to consider an abundance of factors applicable to the parents and a minimally greater number of considerations applicable to a child or children. See Sec. 46b-84 of the General Statutes. In this instance, the Connecticut Child Support and Arrearage Guidelines are applicable. The plaintiff earns approximately $52,000 per year as a teacher in the New Fairfield school system. The defendant is employed as a mortgage officer and claims to be making approximately $35,000 per year. This the court does not find to be credible. In prior years, he earned in excess of $100,000 per year and last year, a year as representative any in all probability, he earned at least $75,000. The court finds his earning capacity to be $75,000, at a minimum. The plaintiff is ordered to pay to the defendant as and for child support, so long as all the children reside with him, the total sum of $213 per week as child support. At any time the children or any of them return to reside with their mother, then the defendant is ordered to pay to the plaintiff as and for child support the sum of $310 per week. Those figures are subject to adjustment in accordance with the number of children residing with either parent at any given time. In the event one child is residing with one parent and two with the other, then the parent obligated to pay child support would pay two-thirds of the order and conversely. In entering this order, the court has used the aforementioned guidelines and finds that the awards comport with the computation thereunder. A contingent wage execution may enter against both parties thereby providing for either eventuality.
The court is vested with broad discretion in dividing property so long as it considers all relevant statutory criteria. CT Page 12485 It is not obligated to make express findings on each and is not required to give equal weight to each in determining an award. No single criterion is preferred over the others and the weight placed on each is dependent upon the circumstances of each case.Debowsky v. Debowsky, 12 Conn. App. 525, 526-27; Carpenter v.Carpenter, 188 Conn. 736, 740-41; Sec. 46b-81 of the General Statutes. As indicated, the only asset remaining for these parties as a result of the marriage is the plaintiff's teacher's retirement program or pension. Considering the criteria and the cases, the court is satisfied that the defendant's earning capacity far outweighs that of the plaintiff and his opportunity to acquire more and greater assets greatly exceeds hers. Under the circumstances, the defendant is awarded no interest whatsoever in the plaintiff's teachers retirement plan or pension.
The plaintiff is ordered to maintain her medical insurance coverage for the benefit of the children and the defendant is ordered to maintain his dental insurance coverage for the minor children. All unreimbursed medical, dental, psychiatric, psychological, orthodontic, prescriptive drug expenses, and any counseling therapy or therapeutic expenses shall be equally borne by the parties, and each of the parties is awarded the right to process insurance claims under section 46b-84 (d) of the General Statutes as it applies to each of the parties at the appropriate time.
The defendant claimed in his testimony that there were certain payments by insurance carriers in reimbursement of medical expenses sustained by him. The court enters no order with respect to the plaintiff's payment to the defendant of those funds. The defendant is ordered to pay the following liabilities listed on his affidavit: GM Visa in the amount of $2,400; GM Visa in the amount of $2,438; Syms $302; Macy's Revolving Account $196; Sears Revolving Account $2,773; Filene's $325. The plaintiff is ordered to pay the following indebtedness of the expenses on her financial affidavit: Macy's $415; Macy's $197; Sears $2,774; Filene's $325; GM Master Card $1,382. The court orders no contribution from the other party to any of these debts.
The defendant is ordered to maintain his current life insurance policy in the amount of $500,000 for the benefit of the minor children until such time as the parties may mutually agree to terminate that obligation under the imprimatur of the statute, CT Page 12486 or in the alternative if that agreement is not reached, until the youngest child attains the age of eighteen (18), dies, marries or otherwise becomes emancipated The plaintiff is ordered to maintain such life insurance policy or policies that she has as a perquisite to her employment for the benefit of the minor children under the same terms and conditions.
Neither party is awarded any counsel fees with the exception of counsel for the minor children who performed an outstanding service with very little time to prepare. It becomes obvious that everything in her office was subordinated to representing these children in this case at this time. She has requested fees in the amount of $3,160 which the court finds to be fair and reasonable and so awards. Each of the parties is ordered to pay one-half of her fees in equal monthly amounts until paid in full under a schedule of equal consecutive payments mutually agreed between counsel for the minor children and the parties themselves. In the event no such mutual agreement can be reached, counsel for the plaintiff is ordered to submit the question to the court for its determination.
The parties have reached a mutually agreeable resolution of their personal property disagreements with the exception of kitchen and dining room furniture. The plaintiff is awarded the dining room table and chairs and the defendant the kitchen table and chairs. No further order is necessary. This case is referred to the Family Services Division for monitoring with respect to the therapy being undertaken by the parties and the children and to receive any information from the physicians, professionals or other therapists engaged in treatment so that such information is readily accessible to the court at any given time.
Judgment may enter in accordance with the foregoing.
Moraghan, J.