JOHN ANTEDOMENICO *v.* HELEN M. ANTEDOMENICO

BALDWIN, O'SULLIVAN, WYNNE, DALY and PHILLIPS, Js.

Argued June 17—decided July 5, 1955

*John Keogh, Jr.,* with whom, on the brief, were *Alfred W. Burkhart* and *Donald J. Irwin,* for the appellant (plaintiff).

*William R. Curtis,* for the appellee (defendant).

BALDWIN, J. The plaintiff has appealed from the denial of his motion to change the order of custody of his minor son, John, rendered in a decree granting him a divorce from the child's mother. General Statutes §§ 7337, 7339.[1] He has assigned error in the facts found, in the court's conclusions, and in a ruling on evidence. No corrections in the finding which could affect the court's decision are warranted. The facts, briefly stated, follow: The plaintiff and the defendant, whose maiden name was Helen Moriarty, were married in Norwalk in August, 1941.

---

[1] "Sec. 7337. ORDER AS TO CUSTODY OF CHILDREN. On any complaint for a divorce, the court may, at any time, make any proper order as to the custody, care and education of the children and may, at any time thereafter, annul or vary such order."

"Sec. 7339. COURT MAY ASSIGN CUSTODY OF CHILDREN TO EITHER PARTY. In any controversy before the superior court between husband and wife as to the custody of minor children of the marriage, the court may assign the custody of any of such children to either parent according to its best judgment upon the facts of the case, and upon such conditions and limitations as it shall deem equitable; and, when such court shall not be actually in session, any judge thereof may, prior to any action in the premises by the superior court, make any order which he may deem reasonable as to the care, custody and maintenance of any such minor children during the pendency of the cause, and make any other order in the cause, including orders of injunction, and any such order may afterwards be set aside or altered by such court, or by such judge when such court shall not be actually in session."

A son, John, was born to them in September, 1942. They lived together until the plaintiff entered the army in February, 1943. At that time they put their household effects in storage, and the defendant and their son went to live with her parents in Norwalk. During the absence of the plaintiff, the affection of his wife toward him chilled. She was indifferent to her maternal obligation to their son. In December, 1944, she wrote to the plaintiff and told him of her feelings. Thereafter, she maintained a separate abode and left the boy to the care of his grandparents. The plaintiff was honorably discharged from the army in December, 1945. Upon returning home, he made fruitless efforts for a reconciliation. In February, 1946, he instituted an action for divorce on the ground of adultery. Upon an amended complaint, charging desertion, he was granted a decree in December, 1951. The custody of the child was awarded to the maternal grandparents. At this time the plaintiff was living with a married sister in Norwalk where there were three adults and five children in the household.

On October 17, 1953, the plaintiff married a widow with three daughters. He is steadily employed, working from 8:30 in the morning until 4:45 in the afternoon for good wages. He owns a well-located and comfortable home in New Canaan where he, his wife, and two of her daughters, aged twelve and sixteen, live. If his son, John, went there, he would have his own room. The plaintiff's wife works as a waitress from 11 a.m. to 3 p.m. and from 6 to 9:30 p.m., daily, at a nearby restaurant; she also earns good pay. Mrs. Moriarty, the grandmother into whose custody John was placed in December, 1951, is now a widow aged sixty-four. Living with her, besides John, are her daughter Jean and the de-

fendant, who is steadily employed. John has his own bedroom, attends school and church regularly, and has a number of playmates in the neighborhood. He has never known any other home. Mrs. Moriarty is a good housewife, is always at home, and has taken complete charge of John's upbringing. The plaintiff has never been denied the opportunity to see his son, but his visits have been irregular. Until the institution of this proceeding, he made no effort to obtain the custody of John or to provide a home for him. The plaintiff has taken little interest in the boy's progress in school or his religious training. He has, however, contributed $10 a week regularly to John's support and has brought him presents. John receives adequate discipline and abundant care and affection from his grandmother. He is a sensitive and emotional child, and a change in his custody would place him in radically different surroundings. On these basic facts, the court concluded that John's welfare required that the order of custody be not changed.

The award of the custody of a minor child is a matter within the sound discretion of the trial court. *Scott* v. *Furrow,* 141 Conn. 113, 120, 104 A.2d 224; *Morrill* v. *Morrill,* 83 Conn. 479, 489, 77 A. 1. We review the award to determine whether that discretion has been abused and whether the trial court, in the exercise of its discretion, has overlooked or misapplied some established principle of pertinent law. *Anderson* v. *Anderson,* 122 Conn. 600, 603, 191 A. 534; *Morrill* v. *Morrill,* supra. The plaintiff offers puissant arguments in support of his motion. He affirms that he is the natural father of the child, that not he, but the defendant, is responsible for the collapse of their marriage which brought about the original award of John's custody to the grandparents, that his, the plaintiff's, circumstances

of living have not, until now, made it possible for him to provide a home for his son, and that the court has not found that his home is an unfit place for John to live or that he himself is an unfit person to have his son's custody. In short, he asserts what he believes to be his superior rights as a father.

Parents are the joint guardians of their minor children. General Statutes § 6850; *Boardman* v. *Boardman,* 135 Conn. 124, 129, 62 A.2d 521. If one parent is in default of his parental obligations, he or she may be deprived of the right to have the care and custody of a minor child, and that right may be conferred upon the other. *Hunt* v. *Hunt,* 116 Conn. 701, 702, 163 A. 608. Neither parent has a right of property in their children of which they cannot be deprived without their consent. *Goshkarian's Appeal,* 110 Conn. 463, 468, 148 A. 379; *In re Appeal of Dattilo,* 136 Conn. 488, 495, 72 A.2d 50. The state is primarily interested in having the status of husband and wife, with joint guardianship of children, maintained. When it is disrupted, the state must exercise its duties as parens patriae in the interests of the child.

While the rights of the respective parents are important and deserve sympathetic regard, the paramount consideration in awarding custody of minor children in any proceeding is the welfare and happiness of the child. *Krasnow* v. *Krasnow,* 140 Conn. 254, 260, 99 A.2d 104; *Scott* v. *Furrow,* 141 Conn. 113, 120, 104 A.2d 224. The contest is not one primarily to determine the rights of the respective parties but rather the best interests of the child. *Kelsey* v. *Green,* 69 Conn. 291, 299, 37 A. 679. This must be so, even though the result may be, if the circumstances warrant it, the denial of the natural right of custody to a parent. *Bailey* v. *Mars,* 138 Conn. 593, 600, 87 A.2d

388; *Mullins* v. *Becker,* 113 Conn. 526, 529, 155 A. 705; *Kelsey* v. *Green,* supra, 298. The rule does not go so far as to require that faithful and devoted parents should be deprived of their children because some wealthy relative or stranger who may have their temporary custody for some good reason is apparently able to provide a higher standard of living than the parents can. That, however, is not the case at bar. By reason of a chain of circumstances for which, in large part, the plaintiff is not to blame, John has been brought up by his grandmother since his babyhood. He is now eleven years old, well cared for and happy where he is. Liberal rights of visitation have been accorded the plaintiff. While he has a good home and is not unfit to have his son's custody, we cannot say, under all the circumstances, that the court abused its discretion or violated any rule of law in refusing to grant the plaintiff's motion for a change of custody at this time.

The error assigned in a ruling of the court refusing to admit a letter written by the defendant's father, John Moriarty, since deceased, to the plaintiff, offered to contradict testimony by the defendant that she had left the Moriarty home to live elsewhere with her father's approval, is without merit. The letter was not admissible under § 7895 because John Moriarty or his representative was not a party to this litigation. The letter was clearly hearsay.

There is no error.

In this opinion the other judges concurred.