[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on May 14, 1989 in Greenwich, Connecticut. They separated on September 5, 1989 when the plaintiff left the family home and moved to California. On November 7, 1989, the minor child Richard Kristopher Conger-Muller was born, issue of the marriage. This proceeding was commenced September 23, 1989 by service of the summons and complaint and a restraining order upon the defendant. The restraining order was to restrain the defendant from performing construction work on premises owned by the plaintiff at 29 Woodland Drive, Greenwich, Connecticut.
At issue in this case is the defendant's right of visitation with the minor child; that is, whether such visitation should take place at all and, if so, the controlling conditions for such visitation. Trial of this matter lasted the better part of six days, predominantly on the issue of visitation.
On her complaint, the plaintiff seeks an order of dissolution of the marriage, custody of the minor child, support for the minor child and "such other and further relief as may be consistent with equity and good conscience." The defendant has filed an answer in which he admits the allegations of the complaint and reiterates the same allegations in a cross complaint in which he seeks a dissolution of the marriage, joint custody of the minor child and "such other and further relief as law and equity may provide." In an amended cross complaint he seeks an equitable division of the assets of the parties. On June 19, 1990, the defendant filed a motion for joint custody. Prior to the filing of that motion, the court appointed counsel for the minor child.
Upon motion filed by counsel for the minor child, all counsel agreed that Dr. Eduardo Baez should do a psychological evaluation of the parties which has been accomplished.
In addition to the issue of visitation, which is the principal contested issue, the defendant seeks counsel fees, an order that the plaintiff be responsible for the fees of counsel for the minor child and the expenses of Dr. Baez, lump sum alimony, payment for his services in the plaintiff's home at 29 Woodland Drive in Greenwich, and for bills incurred for material and supplies. Neither party is seeking periodic alimony.
The relationship between the parties prior to their marriage as it effects their relationship today is most material and relevant on the issue of custody and visitation. The CT Page 4130 parties first met in May, 1988. At that time the plaintiff was a cotenant of the defendant's in a building owned by the defendant in which the plaintiff and her two partners conducted a children's furniture design business. In late June, 1988 they started socializing and in late July, 1988 they became vitally interested in each other.
The plaintiff practices Bhakti Yoga and has practiced this "process" (as the parties have referred to it) for six years. She believes very strongly in its principles which includes vegetarianism, abstention from alcohol, drugs, gambling and illicit sexual relationships.
At the time of their meeting, the plaintiff had been celibate for four years. At the time that the parties' relationship began to be serious, the plaintiff wrote a letter to the defendant advising him of her principles, beliefs and the precepts of Bhakti Yoga. (See plaintiff's exhibit A.) Despite the plaintiff's cautions and the recitation of her beliefs, the defendant pursued the plaintiff in such a way that she became under his control, subject to his manipulation and intimidations.
The court finds that the facts as alleged in plaintiff's exhibit I are true and accepts the plaintiff's testimony in this regard. Based upon that evidence, Dr. Evan Stark, a sociologist, has expressed the opinion that the plaintiff is a battered woman.
The breakup was the result of inequality of power and control demonstrated by a pattern of aggressive behavior on the defendant's part. Physical acts unwanted by the plaintiff and at times against her will were carried out by the defendant which were such that she felt fear and helplessness and continues to fear him.
The plaintiff is 28 years of age. In September, 1989, she moved herself to California. She is in good health. She graduated from the Westover School in Middlebury and majored in English literature at Princeton University, graduating in 1984.
The defendant is 40 years of age. He is a High school graduate and attended Norwalk State Teachers College for one and a half years and has taken further evening courses. He is employed by the New York Telephone Company and has been so employed for twenty years. He is a cable maintenance technician and works seven days per week for 40 to 45 days at a time. His income and assets are as reported in his financial affidavit. He is a hard worker and mechanically inclined. CT Page 4131
The court ordered a psychological evaluation of each of the parties by Dr. Eduardo Baez. Dr. Baez concluded that the plaintiff was alert, rational, suffered from no emotional psychopathology and that she was under the influence of no one other than herself. He testified that her test results demonstrated she tended to be somewhat submissive, that her relationship with the defendant had been a traumatic experience, that she had experienced numerous instances of threats, physical intimidation and control by the defendant. He concluded that the defendant evidenced psychopathology bordering on paranoia, that he evidenced delusional thinking, poor impulse control and a great deal of uncontrollable anger.
Dr. Baez conclusion was that the defendant evidenced chronic psychological maladjustment. He observed that the defendant was obsessed with the notion that the plaintiff was involved in a cult, obsessed with her financial resources and that he was a very hostile individual with the likelihood of an overaggressive behavior. He indicated that the defendant in his interviews demonstrated a preoccupation for wanting to care for his son, that his son was the most important thing in his life right now and that he wanted to save his son from the influence of the cult. Dr. Baez observed that as a result the defendant was extremely agitated and under a great deal of pressure. He expressed the opinion that the plaintiff was in danger because of the defendant's emotional state, that the defendant's personality was very fragile as was his ability to channel his anger. He concluded that the child could be in danger because the defendant would be intent on doing whatever he had to do to protect his child and that such conduct, however manifested, would disturb the psychological relationship between the plaintiff and the child and thus be harmful to the child. It was Dr. Baez's recommendation that visitation continue in a highly structured, supervised setting.
Dr. Baez recited the same history that was testified to by the plaintiff which lead her to feel threatened. Based upon Dr. Baez's examination, the appearance of each of the parties on the witness stand and the testimony, the court finds that the plaintiff has no psychological problems, that she is, indeed, a quite normal individual, that she is bright, intelligent, reserved, quiet, and not under the influence of any cult and, indeed, is her own person. The court finds, further, the defendant is an angry individual, that he is bright, intelligent, but appears driven and obsessed.
At the commencement of the trial, the defendant sought joint custody of the child. Upon completion of the testimony of Dr. Baez, he was looking for structured supervised visitation with the child, apparently recognizing that joint custody was CT Page 4132 definitely not in the best interests of the child. Dr. Baez testified that if the sole criterion for the court was the best interest of the child there should be no visitation with the father. On the other hand, Dr. Stark has indicated that it is important for there to be a relationship between the father and the child. The fact that the child associates a nurturing, loving and empathic presence with a man is very important in early child rearing.
The following quotation from the case of Raymond v. Raymond, 165 Conn. 735, 741 (1974) sets forth the rule of law upon the issue of visitation:
 Visitation rights are not wholly unrelated to the welfare of the children of divorced parents. Minor children are entitled to the love and companionship of both parents. For the good of the child, unless a parent is completely unfit, a decree should allow a parent deprived of custody to visit or communicate with the children under such restrictions as the circumstances warrant. 27B C.J.S. 478, Divorce, 312. If circumstances have placed a financial burden on the parent in relation to visitation, the court may consider whether a reduction in support is in the best interests of the children, to allow the expenditure of funds saved from the reduced payments to be spent on securing visitation. A parent's privilege of visitation of children whose custody has been awarded to the other parent in a divorce action, however, is not an absolute right but one which is dependent on what is for the best interests of the children even though such visitation rights may be restricted or effectively terminated. Lewis v. Lewis, 338 Mich. 197, 201, 61 N.W.2d 66; Butler v. Butler, 83 N.H. 413, 416, 143 A. 471. Where custody and visitation rights have been affected, a court has the power and the duty to safeguard those rights while recognizing that such interests are subordinate to the welfare of the children. Neither parent's interests with regard to his or her children are a property right nor are they rights which cannot be terminated without his or her consent. Doe v. Doe, 163 Conn. 340, 343, 307 A.2d 166; Goshkarian's Appeal, 110 Conn. 463, CT Page 4133 468, 148 A. 379. A contest relative to custody, such as visitation rights, is not one primarily to determine the rights of the respective parties but rather a determination of the best interests of the child or children. Antedomenico v. Antedomenico, 142 Conn. 558, 562, 115 A.2d 659, see Krasnow v. Krasnow, 140 Conn. 254, 260, 99 A.2d 104.
The court finds that structured, supervised visitation is in the child's best interest.
The remaining question for consideration is whether the defendant is entitled to any reimbursement for his labor or the materials he purchased for the plaintiff's house at 29 Woodland Drive, Greenwich. At the time of the separation of the parties, the defendant was engaged in extensive remodeling of the plaintiff's house. On October 5, 1990, an order was entered temporarily enjoining the defendant from performing construction work upon these premises and from entering upon said premises. This order was served upon the defendant on October 6 and a hearing was set for October 19. The defendant continued to perform work after service of the order. The court is allowing the defendant's claims for expenses incurred by him for services of others and supplies for which he has submitted cancelled checks (see defendant's exhibit 10).
The defendant has requested an order that the child's name be changed to Kristopher Thomas Muller. In this proceeding this court does not have the jurisdiction to grant this claim for relief. Mayor v. Mayor, 17 Conn. App. 627 (1989). The defendant has requested that the court order the minor child be baptized and circumcised. There has been no evidence to demonstrate whether such an order would be in the child's best interest. The request is, therefore, denied.
In addition to the foregoing findings, the court finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the amended complaint have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. The defendant is at fault for the breakdown of the marriage.
Having considered all of the evidence, the case law CT Page 4134 and the provisions of 46b-56, 46b-62, 46b-81, 46b-82 and46b-84 of the General Statutes, the court enters the following orders:
1. A decree of dissolution of marriage shall enter on the plaintiff's complaint on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff shall have sole custody of the minor child, Richard Kristopher Conger-Muller born November 7, 1989.
3. The defendant shall have the right of visitation with the minor child as follows: a. Supervised visitation, away from the plaintiff's premises, to be exercised in the presence of a responsible third party, chosen by the plaintiff and at a place chosen by the plaintiff. b. Visitation shall be limited to the State of California or any other state in which the plaintiff may reside in the future. c. Visitation shall be limited to four visits per year; shall occur no more than every third month; shall not exceed one visit per day; be of no more than three consecutive hours duration; and shall not exceed four consecutive days. d. The defendant shall give reasonable notice of his intention to exercise his visitation right, with reasonable notice defined as no less than three weeks before said visitation. Notice shall be given to an individual designated by the plaintiff in writing. e. The plaintiff shall be responsible for the pick up and delivery of the child. f. Upon the exercise of his visitation, the defendant shall pay his own transportation expenses, lodging expenses and all other personal expenses. The expenses for the location of visitation and the presence of such parties as the plaintiff shall choose to be present shall be paid by the plaintiff. g. In the event the plaintiff is within two hundred miles of Greenwich on a temporary basis of at least four days duration, she shall allow visitation with the defendant under the same terms and conditions set forth in subparagraphs (a), (e) and (f) above for three consecutive hours for two of the days that the plaintiff is within such distance of Greenwich. Such visitation shall not be considered in the limitation of visitation in subparagraph (c). h. The plaintiff shall keep the designated individual in subparagraph (d) above and her attorney, Michael A. Meyers, advised at all times as to her address and CT Page 4135 telephone number and shall notify each of them within twenty-four hours of any change of address or telephone number.
4. The defendant's right of visitation shall be subject to the following conditions: (a) The defendant shall have no contact or communication with the plaintiff. (b) The defendant shall not interfere or attempt to interfere with the plaintiff or the child's daily existence. (c) The defendant shall not attempt to discover the plaintiff's address or telephone number. (d) The defendant shall have no contact with the plaintiff's family or friends. (e) The defendant shall notify the third party supervising the visitation where he is staying and when he will be leaving, and he shall comply with that schedule. (f) The defendant shall leave the vicinity of the exercise of his visitation within twenty-four hours of the conclusion of his visitation. The vicinity of the exercise of his visitation shall be defined as within seventy-five miles of the visitation location.
5. This court shall retain jurisdiction to review its orders regarding visitation in three years upon appropriate motion by either party.
6. The defendant shall provide medical and hospital insurance coverage for the minor child as available through his employer. Any uninsured or unreimbursed medical or dental expenses incurred for the minor child shall be shared equally by the parties. The plaintiff shall have the benefit of the provisions of 46b-84 (c) of the General Statutes. The addresses of the doctors and providers of services shall be erased.
7. There shall be no alimony to either of the parties.
8. Each party shall be responsible for his or her own liabilities and shall indemnify and hold harmless the other party from any claim or demand thereon.
9. Each party shall retain such real property as is listed in his or her financial affidavit free of any claim or demand of the other party.
10. The parties shall divide their tangible personal property as they shall agree. In such division the plaintiff may be represented by a third party or have such third party or CT Page 4136 parties present for such division. In the event of any disagreement between the parties, the parties shall consider the side of the family that such item came from. Any such disagreement shall be referred to the Family Relations Division for mediation of such disagreements. If such mediation is unsuccessful, the parties shall return to court for further orders.
11. The plaintiff shall pay to the defendant the sum of Nineteen Thousand Two Hundred and Fifty ($19,250.00) Dollars to reimburse the defendant for his expenses at 29 Woodland Drive, Greenwich, Connecticut within thirty (30) days of the date hereof.
12. Each of the parties shall retain such personal property as is disclosed in his or her financial affidavit, free of any claim or demand by the other party.
13. The defendant shall pay support to the plaintiff in the amount of $200.00 per week, the same to be mailed to the representative designated in writing by the plaintiff. An immediate order for wage withholding shall enter to secure this order for support.
14. The parties shall be equally responsible for the expenses of Dr. Baez and counsel for the minor child.
15. The diamond engagement ring is the plaintiff's, and she may do as she chooses with regard to the same.
16. Each of the parties shall pay his or her own attorney's fees.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK III, JUDGE