[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on October 22, 1982 in Bridgeport, Connecticut. There has been one child issue of the marriage, Megan Elizabeth Fairfield born October 18, 1983.
When Megan was one year of age, the plaintiff observed that Megan had difficulty sitting and was not crawling. Upon medical examination, it was determined that she has cerebral palsey. While she is not on any medication at the present time, the plaintiff testified that she had attended the Ripple program at the Rehabilitation Center and that she did need special care and treatment.
Megan has been diagnosed as having an attention deficit disorder. She is in the first grade at the Thomas Hooker School in Bridgeport and attends school from 8:45 a.m. to 2:45 p.m., Monday through Friday. Her mother picks her up at school and brings her home.
The defendant left the family home on July 12, 1988. He left saying he was going on a business trip to Indiana and that he would return on Saturday. He did not return and the plaintiff, upon inquiry, determined he did not go to Indiana and he did not go upon a business trip. She made a missing person report to the police department. He remained missing until May, 1990, when the plaintiff was advised by the Houston Police Department that the defendant was living and working in Houston, Texas. During the almost two year period of absence, the defendant did not telephone, did not send any money nor communicate in any fashion with the plaintiff or his child.
On August 15, 1990, the defendant was served in Texas with the papers in this action. On August 30, this court held a hearing on an application for prejudgment remedy and ordered garnished a certain "Tax Efficiency Savings Plan" of the defendant's held by Bridgestone/Firestone, Inc. of Stamford, the defendant's previous employer.
On October 11, the court entered orders based upon the agreement of the parties that the funds in possession of Bridgestone/Firestone were to be transferred to the plaintiff to be held for past and future child support retroactive to the date of the filing of the complaint in an amount of $100.00 per week, $75.00 by way of credit from Firestone and $25.00 to be paid directly by the plaintiff, that the plaintiff shall have custody of the minor child and the defendant to have visitation with the minor child on October 18, 19 and 21 from 5:00 p.m. to 7:00 p.m. to be exercised at the plaintiff's home. The pendente lite orders were continued, then, to October 22, 1990. The CT Page 3634 defendant appeared at that time and orders were entered ordering the defendant to pay $100.00 per week child support of which $50.00 was to be paid by him and $50.00 paid from the Firestone account. The case was, thereafter, set down for pretrial and then set down for trial with a trial assignment date of April 1, 1991.
On April 1, 1991, plaintiff appeared ready to proceed. Defendant's counsel appeared with a motion to withdraw. Attached to that motion is a Western Union Mailgram stating as follows: "Regarding your letter dated March 14, 1991, it is not financially possible for me to make a trip to Connecticut nor can I take time away from my job. Doug Fairfield." The court reserved decision on the motion to withdraw and ordered that the trial of the matter was to proceed and ordered, further, that defendant's counsel was to participate in these proceedings.
The plaintiff is forty-three years of age. She has two jobs, one as a switchboard operator at Fairfield University from 4:00 p.m. to 11:00 p.m. She also works as a waitress at Circle Lanes on Saturday and Sunday evenings for five hours on Saturday and four to five hours on Sunday. Since she received no money from the defendant from July, 1988 to July, 1990, it was necessary for her to file in bankruptcy in November, 1988. She is a high school graduate.
In October, 1982, the plaintiff was terminated in her position as receptionist at the Bullard Company where she had worked for two years. Following that position, she worked at U.S. Surgical in Norwalk as a switchboard operator and receptionist until April, 1983 when she terminated because of her pregnancy. In 1987 she worked as a receptionist for part of the year and earned $642.00 as reported in plaintiff's exhibit A.
The plaintiff was married before her marriage to the defendant and had one child, Amy, issue of that marriage who lives with her and is fifteen years of age. At the time of her marriage to the defendant, she was receiving alimony of $25.00 per week which terminated upon her marriage to the defendant.
The plaintiff's weekly total net income from her earnings are shown on her affidavit as $285.00. However, she earns tips at the bowling alley which may total $30.00 to $40.00 on a busy evening. It is clear that she is doing everything that she can to keep her household running. She does have high blood pressure and is on blood pressure medication to control it. At the present, Megan is cared for by the plaintiff's mother and by Amy during the hours when the plaintiff is at work. CT Page 3635
The defendant is ten years younger than the plaintiff. He lives in Houston with a woman and her ten year old daughter. During the pendency of this action, he first worked for Executive Couriers, Inc. driving a courier truck and now works for Utopia Water Company as a salesman. He is a high school graduate and attended two years at Norwalk Tech. His financial affidavit shows $231.00 of weekly net income ($270.00 per week gross or $14,000.00 a year). It shows the only assets as miscellaneous furniture and clothing of $500.00 and liabilities of $52,793.00.
At the time of their marriage, the defendant worked for Business Products Co. of Wilton, Connecticut. At that time he received gross annual earnings of $21,000.00. (See defendant's exhibit 1.) In July, 1983 he started working for Bridgestone/Firestone, Inc. in Stamford. The defendant worked through the ranks in Bridgestone/Firestone and in March, 1988 was promoted to manager of the store. In 1987 he earned $45,436.00 (see plaintiff's exhibit A). In June, 1988 he was terminated at Bridgestone/Firestone for theft of merchandise. No criminal action was taken, he defendant agreeing to make restitution and signing a promissory note for $4,945.56. (See defendant's financial affidavit — liabilities.) At the time he left Bridgestone/Firestone he was earning the equivalent of $55,000.00 — $60,000.00 in salary and commissions per year. He then took a position with State Line Tire in Greenwich as sales manager. At State Line the defendant received a cut in pay but the plaintiff testified that the defendant stated to her he expected to receive "a pretty good salary" for the next year or so.
The marriage of the parties was having its problems prior to the defendant leaving. The parties had sought marriage counseling in November, 1987. In July, 1988, when the defendant left, he left with a leased truck and owes money, still, on that leased vehicle.
Upon the commencement of trial the plaintiff, for the first time, requested that the defendant be denied all visitation with the minor child. In support of her position the plaintiff testified that Megan was upset and hysterical when her father left; that it was a year and a half before "she settled down"; that when she saw her father at court ordered visitation on October 18, 1990 she was afraid of him; that Megan did remember him but felt uneasy about the visitation; that she has seen her father once in three years; that Megan was having a hard time adjusting; that the defendant has called Megan "from time to time"; that the defendant is supposed to call on Sunday evenings and that Megan is disturbed by the phone calls. The plaintiff testified, also, that the defendant told fellow CT Page 3636 employees at Executive Couriers, Inc. in Houston in June, 1990, that he was divorced and his daughter, Megan, was dead.
The plaintiff further testified that it was not in Megan's best interest to see or hear from her father. No other evidence other than the foregoing was offered on the issue of visitation.
In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he or she is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for the dissolution of the marriage if such causes are relevant in a determination of the best interests of the child. Section46b-56(b) of the General Statutes.
With regard to the issue of visitation and the conditions of visitation, the following quotation from the case of Raymond v. Raymond, 105 Conn. 735, 741 (1974) sets forth the Supreme Court's position upon the issue of visitation:
 Visitation rights are not wholly unrelated to the welfare of the children of divorced parents. Minor children are entitled to the love and companionship of both parents. For the good of the child, unless a parent is completely unfit, a decree should allow a parent deprived of custody to visit or communicate with the children under such restrictions as the circumstances warrant. 27B C.J.S. 478, Divorce, 312. If circumstances have placed a financial burden on the parent in relation to visitation, the court may consider whether a reduction in support is in the best interests of the children, to allow the expenditure of funds saved from the reduced payments to be spent on securing visitation. A parent's privilege of visitation of children whose custody has been awarded to the other parent in a divorce action, however, is not an absolute right but one which is dependent on what is for the best interests of the children even though such visitation rights may be restricted or effectively terminated. Lewis v. Lewis, 338 Mich. 197, 201, 61 N.W.2d 66; Butler v. Butler, 83 N.H. 413, 416, 143 A. 471. Where custody and visitation CT Page 3637 rights have been affected, a court has the power and the duty to safeguard those rights while recognizing that such interests are subordinate to the welfare of the children. Neither parent's interests with regard to his or her children are a property right nor are they rights which cannot be terminated without his or her consent. Doe v. Doe, 163 Conn. 340, 343, 307 A.2d 166, Goshkarian's Appeal, 110 Conn. 463, 468, 148 A. 379. A contest relative to custody, such as visitation rights, is not one primarily to determine the rights of the respective parties but rather a determination of the best interests of the child or children. Antedomenico v. Antedomenico, 142 Conn. 558, 562, 115 A.2d 659, see Krasnow v. Krasnow, 140 Conn. 254, 260, 99 A.2d 104.
In this case, the testimony of the plaintiff is uncorroborated. There is no showing that the defendant is completely unfit. The decree in this case should allow the defendant to visit Megan when he is in this area and should allow him to communicate with her by mail and by phone. For the moment, considering Megan's physical condition and age, the court shall not allow visitation to take place in Texas. However, upon a showing that the father has had visitation with her and has communicated with her so that a relationship of trust has been established, modified orders of visitation might well be entered permitting visitation to Texas during the defendant's vacation.
Equally difficult of determination is the issue of alimony and support. The plaintiff presses for a determination that the defendant has wilfully restricted his earning capacity so as to deny his wife and child the reasonable support which it is his duty to supply. It is certainly true that the defendant is earning far less in his present position than he was before he left in July, 1988. His conduct in abandoning his wife and child certainly was not exemplary. However, there is evidence that the defendant had little or no relationship with his own family (his parents and his sister); he had stolen from his employer; there was marital discord sufficient for the parties to seek marital counseling in November, 1987; he was having difficulty coping with the problems of his child; and there were apparent financial difficulties. It has long been held that "the primary basis for an award of alimony has been not to punish a guilty spouse but to continue the duty to support the other who, in legal contemplation, was abandoned." Tobey v. Tobey, 165 Conn. 740, 748.(1974); Fattibene v. Fattibene, 183 Conn. 433, CT Page 3638 441 (1981). The award of alimony and support cannot, therefore, be one of punishment.
The plaintiff argues that orders of alimony and support should be based upon the defendant's earning capacity rather than his actual earnings and cites the following Supreme Court decisions on this issue: Lucy v. Lucy, 183 Conn. 230
(1981); Miller v. Miller, 181 Conn. 610, 611, 612 (1980); Schmidt v. Schmidt, 180 Conn. 184 (1980); Whitney v. Whitney,171 Conn. 23, 28 (1976); Tobey v. Tobey, 165 Conn. 742, 749 (1974); see Yates v. Yates, 155 Conn. 544, 548 (1967); and the following Appellate Court cases. Broderick v. Broderick, 20 Conn. App. 145,147 (1989), Hart v. Hart, 19 Conn. App. 91, 94 (1989).
Our courts universally held that it is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field. This is not the situation in this case. There is evidence that the defendant did not voluntarily quit his position at Bridgestone/Firestone. Indeed, the evidence is he was fired from that position. While he may have voluntarily quit his position at State Line Tire in Greenwich, there is no evidence as to why he quit that position. The court can, however, conclude that the defendant was "running away" from everything in his life for whatever the reason may have been.
The court cannot find that the defendant has wilfully restricted his earning capacity so as to deny his wife and child the reasonable alimony and support which it is his duty to supply. So that the matter may be monitored in the future, the court shall order that the defendant supply the plaintiff with a copy of his income tax return for each year.
Finally, there is evidence of the defendant's interest in a deferred compensation plan at Bridgestone/Firestone. The court previously entered orders with respect to this plan. The balance of the plan is $3,115.00. of this amount, $1,900.00 was due to satisfy the pendente lite orders to April 1, 1991. While the court previously issued a property execution and court order on this account (see order of October 11, 1990) this has, not, been honored, apparently, because the plan administrator can recognize only a Qualified Domestic Relations Order.
The court has considered all of the criteria of46b-81, 46b-82 and 46b-84 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368, this CT Page 3639 court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234
(1982).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
 2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant has, in effect, abandoned his wife and child.
5. The defendant is at fault for the breakdown of the marriage.
 6. There is an arrearage on the pendente lite orders of $2,250.00 to April 1, 1991, $1,900.00 from Bridgestone/Firestone and $350.00 from the defendant (see summary of arrears).
The court enters the following orders:
 1. A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
 2. Custody of the minor child, issue of the parties, Megan Elizabeth Fairfield, born October 18, 1983, shall be with the plaintiff.
 3. The defendant shall have rights of reasonable visitation upon reasonable notice exercisable in Connecticut but not to include overnight visitation. He shall also have telephone communication with the child on Sundays between the hours of 7:00 and 7:30 p.m. The exercise of visitation by the defendant shall be at his expense.
 4. The defendant shall pay the pendente lite order of $350.00 due from him by payment of $10.00 per week in addition to the current orders as hereinafter set forth.
 5. The defendant shall pay to the plaintiff by way of alimony the sum of Fifty ($50.00) Dollars per week terminable upon the earliest to occur of the following events: the death of either of the parties, the plaintiff's remarriage or CT Page 3640 October 18, 2001.
 6. The defendant shall pay to the plaintiff by way of support for the minor child the sum of Sixty ($60.00) Dollars per week.
 7. Each party shall furnish the other party a copy of his or her earning statements by calendar year to be furnished by April 15 next following the earning year through April 15, 2001 together with a true copy of his or her income tax return for the year as filed with the Internal Revenue Service.
 8. The plaintiff shall provide for the benefit of the minor child, Megan Elizabeth Fairfield, Blue Cross, Blue Shield and major medical coverage or their equivalent.
 9. The defendant shall maintain such medical and hospital insurance coverage as he may have available through any employer for the benefit of the minor child so long as it is available at no extra cost to him. The plaintiff shall have the benefit of the provisions of 46b-84(c) of the General Statutes.
 10. Any uninsured or unreimbursed medical or dental expenses that may be incurred for the minor child shall be shared equally by the parties.
 11. The plaintiff shall be entitled to the entire proceeds of the defendant's deferred compensation savings plan by a Qualified Domestic Relations Order.
 12. The tangible personal property located at 609 Courtland Street, Bridgeport, and all personal property listed on the plaintiff's financial affidavit shall be the property of the plaintiff free of any claim or demand by the defendant. As to the defendant's request for the return of his saxophone, the court orders the saxophone shall be the property of the plaintiff.
 13. The tangible personal property in the defendant's possession shall be his free of any claim or demand by the plaintiff.
 14. All the debts of the defendant incurred prior to the date of dissolution including but not limited to those debts listed on his financial affidavit shall be the defendant's sole responsibility, and he shall hold the plaintiff harmless as to same.
 15. All debts of the plaintiff incurred prior to the date of dissolution including but not limited to those debts listed on her financial affidavit shall be the plaintiff's sole responsibility, and she shall hold the defendant harmless as to same.
 16. Each party shall be responsible for the payment of his or her own legal fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE CT Page 3641