[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT AND MOTION FOR ORDER (DOCKET ENTRIES 213 AND 214)
The court has for consideration the post judgment motions of the defendant involving the issue of visitation. The motions are a motion for contempt in which it is alleged that the plaintiff denied the defendant visitation on Saturday, July 11, 1992, Saturday, August 8, 1992, Saturday, August 29, 1992 and continually denied visitation with the youngest child on alternate Saturdays from 12:00 noon to 5:00 p.m. The motion for order seeks "full reasonable visitation" and Wednesday night visits from 6:15 p.m. to 8:15 p.m.
A decree of dissolution of the marriage was entered on July 7, 1988. At that time custody of the three minor children, Jamie, then age 10, Christopher, then age 7, and Nicholas, then age 4, was granted to the plaintiff mother with rights of reasonable visitation to the defendant father to include alternate weekend visitations from Friday at 5:30 p.m. to Sunday CT Page 7874 at 7:30 p.m. and Wednesday evenings from 5:30 p.m. to 7:30 p.m. on school nights and 5:30 p.m. to 8:30 p.m. if there was no school the next day.
The parties have been litigating numerous issues but particularly the issue of visitation since the date of the decree. This is best evidenced by the fact that the docket entries are now up to number 241. This is the third extended hearing held in this matter; a Memorandum of Decision dated January 22, 1991 (docket entry number 166) having been filed by the undersigned and a Memorandum of Decision dated March 6, 1992 having been filed by Judge Karazin. The court has devoted the major portion of eighteen trial days to this proceeding and the proceeding for modification of support.
This court is here concerned with visitation of the defendant with three children, Jamie, who was born January 18, 1978 and is now 15 years of age, Christopher, who was born June 6, 1981 and is now twelve years of age, and Nicholas, who was born March 19, 1984 and is nine years of age.
As noted by Judge Karazin in his Memorandum of Decision, the court this time has listened to the father, listened to the mother, listened to the present Mrs. Franco, listened to the grandparents, Mrs. Franco's parents, Mr. and Mrs. Guay, listened to Mr. Kevin Lohman, and listened to Jennifer Louise, the Family Relations Office to whom this case was referred for an updated study.
As has been previously noted, both by Judge Karazin and the undersigned, the parties are extremely vindictive to one another. The parties continue to use this case to interfere with each other's lives. The evidence, in large part, reduces itself to a bitter contest between the parties with vituberative [vituperative] remarks by each and numerous cautions by the court addressed to the parties. Any objectivity or concern for the children was lost in the courtroom. The parties were doing what they have always done and that is attempt to "push one another's buttons" and attempt to exercise some degree of control, by one over the other. Evidence of this may be seen in the allegations of the very motions that this court has for consideration. (See the allegations of paragraph 3 of docket entry number 213 and paragraph 4 of docket entry number 214, designed to "push the plaintiff's buttons.") CT Page 7875
The court has taken into consideration all of the relevant statutory criteria and, in particular, the provisions of 46b-56 of the General Statutes. The court has taken into consideration all of the evidence, the recommendations of the Family Relations Officer and has considered all of the claims of the parties and counsel for the children.
The court finds that it is in the best interests of the children to have visitation with the father who the court finds to be a fit parent. The parents have got to put aside their feelings for each other. While it may be an almost impossible task, they must totally erase all of the ill feelings each bears to the other. The conduct of each to the other has caused the children to feel as they do, frightened, upset and fed up. The comments made by Attorney Rosenberg in her letter to Judge Karazin dated February 24, 1992 about the children's feelings are as applicable today as they were then and, indeed, this is exactly what Jamie was trying to say when he was testifying. This same feeling is echoed by Christopher. In very short language — Mr. and Mrs. Franco, the children are crying out! It is up to the parents to change.
Mrs. Franco maintains she wants the children to have a relationship with their father and has maintained that she does nothing to interfere with that relationship. That may be so, but it is clear to this court that her feelings are being made known to her children by her actions and, perhaps, by some of the papers the children have seen concerning these proceedings. Certainly, the feelings of Mr. and Mrs. Guay have had to cause an affect upon the children also.
The defendant, too, will have to change his ways. He has been argumentive, stubborn and hardheaded. For every action on the plaintiff's part, there has been an equal and opposite reaction. I find that the defendant has been the first to cause the commotion most of the time.
Jamie has expressed fear of his father. The court finds that the defendant has never abused the children and finds that any fear of physical harm on the part of any of the children is not well founded. Jamie, as previously noted, is now 15 years of age. He is of sufficient age and capable of forming an intelligent preference. Section 46b-56 (b) of the General Statutes requires the court to "be guided by the best `interests of the child, giving consideration to the wishes of CT Page 7876 the child if he is of sufficient age and capable of forming an intelligent preference." That does not mean the court must follow the child's wishes, but give consideration to the child's wishes. That the court has done and, indeed, has given consideration to the other children's wishes as well. With these considerations in mind, the court finds, as previously noted, that it is in each of the children's best interests to have some visitation with their father.
The following quotation from the case of Raymond v. Raymond, 165 Conn. 735, 741 (1974), sets forth the rule of law upon the issue of visitation.
 Visitation rights are not wholly unrelated to the welfare of the children of divorced parents. Minor children are entitled to the love and companionship of both parents. For the good of the child, unless a parent is completely unfit, a decree should allow a parent deprived of custody to visit or communicate with the children under such restrictions as the circumstances warrant. 27B C.J.S. 478, Divorce, 312. . . . A parent's privilege of visitation of children whose custody has been awarded to the other parent in a divorce action, however, is not an absolute right but one which is dependent on what is for the best interests of the children even though such visitation rights may be restricted or effectively terminated. Lewis v. Lewis, 338 Mich. 197, 201, 61 N.W.2d 66; Butler v. Butler, 83 N.H. 413, 416, 143 A. 471. Where custody and visitation rights have been affected, a court has the power and the duty to safeguard those rights while recognizing that such interests are subordinate to the welfare of the children. Neither parent's interests with regard to his or her children are a property right nor are they rights which cannot be terminated without his or her consent. Doe v. Doe, 163 Conn. 340, 343, 307 A.2d 166; Goshkarian's Appeal, 110 Conn. 463, 468, 148 A. 379. A contest relative to custody, such as visitation CT Page 7877 rights, is not one primarily to determine the rights of the respective parties but rather a determination of the best interests of the child or children. Antedomenico v. Antedomenico, 142 Conn. 558, 562, 115 A.2d 659, see Krasnow v. Krasnow, 140 Conn. 254, 260, 99 A.2d 104.
There is no ongoing visitation between the father and the children. Indeed, the relationship between the father and the children at present is not the best. However, there is, indeed, no reason for the children to be hesitant in seeing their father. Their father loves them very much indeed and there have been times in the past when the children have enjoyed being together.
With regard to the motion for contempt, the court denies that motion and does not find the plaintiff has wilfully and intentionally violated any order of the court.
On the motion for order regarding visitation, the court orders:
 1. Beginning in October, 1993, the defendant shall have visitation with the children the first and third Saturdays of that month and each month thereafter from 10:30 a.m. until 7:00 p.m. Visitation on these Saturdays shall be with all three children. On the second Saturday of October and each month thereafter, visitation shall be with one of the children. The first such Saturday shall be with Nicholas, the next such Saturday shall be with Christopher and the third such Saturday shall be with Jamie. Delivery of the children to the home of the defendant shall be made by the plaintiff and return of the children to the plaintiff's home shall be made by the defendant. The parties shall refrain from any comment directed by one to the other, except only for remarks made in the children's best interests. Delivery of the children and return of the children shall be made in timely fashion, that is, no more than ten minutes late for either of the parties.
 2. The children shall feel free to call their father at any reasonable time reversing the long distance telephone charges.
CT Page 7878
 3. Illness of a child shall be the only excuse for visitation not taking place except that other plans that any one of the children may have in their best interests shall be taken into consideration. Other plans shall include birthday parties, athletic events in which the child may be participating and the like. This does not include Guay family get togethers which must be scheduled around these visitation orders. A child having such other plans shall call his father to explain the conflict and request his permission to be excused from visitation. The court does not expect this to be abused by any child.
 4. The order of Judge Karazin in his Memorandum of Decision in paragraph 8 is reiterated, that is, that neither party shall take the law into his or her own hand concerning any violations of the provisions of paragraph one.
 5. Each of the parties is restrained from calling or contacting the other party, from interfering with or in any way annoying the other party and from contacting or communicating with any person employed by or associated with the other party in business, and from contacting or communicating with any member of the other party's family. This language is meant to include Mr. Kevin Lohman, even though he is not a member of Mrs. Lohman's family. Each party shall refrain from entering upon the other party's property and shall refrain from all nature of harassment, verbal or otherwise, of the other party, such other party's business associates and members of the family. This order shall continue in full force and effect until further order of the court. In the event of further court proceedings, either party may petition the court for permission to conduct appropriate investigation on relevant issues to be litigated.
 6. So that the parties are not confused, the orders set forth herein are intended to control all issues of visitation and conduct of the parties, each to the other. All orders previously entered in conflict herewith are vacated.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE CT Page 7879