[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO MODIFY CUSTODY (DOCKET ENTRY NO. 120 DATED MAY 22, 1997
The parties were married in September, 1978. They separated in January, 1992 and Mrs. Metz and the boys relocated to Florida that summer. They have lived in Florida since that time. A decree of dissolution was entered in March, 1994. At that time, it was ordered that the parents share joint legal custody and the boys continue to reside with the plaintiff. As there is a significant geographical distance involved, provisions were included for visitations with the father during the summer months as well as holiday and school vacation periods.
The defendant has filed a motion for modification of custody seeking custody of his two sons, Andrew age 15 and Joseph age 11. Andrew's birthday was August 26 and Joseph's August 16 so both boys have just reached their stated age. The children presently reside with their mother and stepfather in Mary Esther, Florida. The plaintiff is now Mrs. John Porter having married Mr. Porter in October, 1996. Andrew is a student in high school and Joseph is a sixth grader in junior high school.
The latter part of the year 1996 Andrew called his father and begged that he be able to come to Connecticut to live. It was this call and this request that initiated the father's motion for modification of custody in January, 1997. In January of 1997, when Andrew saw Dr. Welsh, he stated: "I've definitely decided I want to live with my dad." (See defendant's exhibit 2, report of Dr. Welsh, p. 2.) However, Andrew has now changed and is extremely upset with his father. During January, 1998, Andrew ran away from his mother's home. When his father learned of this, he involved the police and Andrew's friends in his attempt to locate his son. When Andrew returned, he was very angry at what he perceived was his father's meddlesome behavior. His anger has intensified in the period of time since that date. CT Page 10908
The boys were interviewed by Dr. Rick Spencer, psychologist, in September and October, 1997. At that time, Andrew indicated a preference to live with his mother rather than his father. He said that his mother "needed" him. (See defendant's exhibit 1, Dr. Spencer's report, p. 16.) At that time, Joseph indicated that he wanted "to try one year of living with my dad . . . then come back and live with my mom and see how it works out."
It is clear that Andrew is of sufficient age and capable of forming an intelligent preference as to his own wishes on the issue of custody. He has expressed his wish to Dr. Spencer and to his counsel that he wishes to live with his mother.
Ms. Champagne has testified that Joseph is not of sufficent age and capable of forming an intelligent preference. However, Dr. Spencer indicated that Joseph appeared in September and October, 1997, to be slightly older than his then age of ten. He notes that he "easily engaged in conversation and appeared to be genuine during the interview." (Dr. Spencer's report, p. 19.) His counsel has indicated that Joseph's wish is to remain with his mother. Even Dr. Spencer, in his recommendations, suggested that any change of custody for Joseph occur at a transitional point in his educational career such as the beginning of ninth grade. (Dr. Spencer's report, p. 33.)
Controlling in this case as in all cases involving custody of minor children is § 46b-56(b) of the General Statutes. That provision of the statutes provides in part as follows:
 In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference, . . . .
With regard to the issue of custody, the following quotation from the case of Raymond v. Raymond, 165 Conn. 735, 741 (1974) sets forth the rule of law upon the issue of custody.
. . . Where custody and visitation rights have been affected, a court has the power and the duty to safeguard those rights while recognizing that such interests are subordinate to the welfare of the children. Neither parent's interests with regard to CT Page 10909 his or her children are a property right nor are they rights which cannot be terminated without his or her consent. Doe v. Doe, 163 Conn. 340, 343, 307 A.2d 166; Goshkarian's Appeal, 110 Conn. 463, 468, 148 A. 379. A contest relative to custody, such as visitation rights, is not one primarily to determine the rights of the respective parties but rather a determination of the best interests of the child or children. Antedomenico v. Antedomenico, 142 Conn. 558, 562, 115 A.2d 659, see Krasnow v. Krasnow, 140 Conn. 254, 260, 99 A.2d 104.
Family Relations had conducted a study regarding custody of Andrew and Joseph and has made recommendations. That report, however, has not been updated and is dated April 29, 1998. Ms. Champagne's last contact with the boys, however, was in December, 1997. (See court's exhibit 2.)
Dr. Spencer has set forth certain conclusions in his report (defendant's exhibit 1, p. 29). The court has adopted these conclusions in part and using these conclusions as a guide, makes the following findings:
1. Both children and parents have positive attachments to each other. The children appear to have a positive relationship with John Porter, their stepfather, and with the defendant's live-in companion, Debbie Gibson.
2. Both parents appear to provide an adequate physical environment for the children to develop with appropriate resources for the children's needs, may they be mental or physical health, educational or social. Both households are within acceptable limits.
3. Both parents showed equal and adequate knowledge of the interests and likes and dislikes of both Andrew and Joseph.
4. There is evidence that both parents support the children's extracurricular activies such as sports.
5. There is evidence that the parenting syle of each parent is quite different. The defendant is much more empathetic and understanding but has difficulty with follow-through with strict discipline. The plaintiff is much more black and white in her parenting but has difficulty with empathetic CT Page 10910 communication. This approach makes her more resistant and she appears over-controlling to her children.
6. There is no evidence that either parent is physically abusive towards the children. Both have used corporal punishment in the past but have not used it for some time.
7. There is evidence that the plaintiff has engaged in negative behavior towards the defendant in front of the children, which adversely impacts their perceptions of him. She has made disparaging remarks about the defendant regarding child support, these court proceedings, her opinions of his motivation for custody, and other issues. These types of statements can lead to the Parental Alienation Syndrome. Joseph's view of his father is quite positive and does not appear to have been affected by the plaintiff's comments. Andrew, on the other hand, has become alienated from his father, which is partially due to this alienating behavior.
8. The defendant's personality style facilitates him to be active and at times aggressive in attempts to assert his opinion. This has contributed to Andrew's present feelings towards his father.
 Due to the plaintiff's bitterness over the divorce and her perception of being the victim, the defendant's personality style causes her much stress, and she reacts with the aforementioned negative behavior towards him in front of the children.
9. The evidence demonstrates that Andrew has vacillated in his living preference but currently insists that he wishes to live with his mother. His preference is partically related to the parental alienation behavior from his mother described above. His decision, too, is related to his full-blown adolescence with his resulting need for autonomy, and the desire to stay with his current peer group, particularly his girl friend.
10. Andrew's personality style, which is characterized by good social skills, narcissism, grandiosity, and exploitive manipulativeness is likely to come in conflict with any parent but particularly a parent who disciplines in a black and white/rigid fashion, like his mother. On the other hand, his father's more laissez-faire approach may be too indulgent. It is clear both parents should have CT Page 10911 psychological help in parenting Andrew.
11. Joseph at present prefers to live with his mother. He does have a desire to live with his father. It is hoped that his present preference has not been influenced by his mother. Dr. Spencer notes that his psychological test data shows a significant sense of loss of his father and thereby a genuine desire to reconnect with him.
12. Both parents appear to be appropriately motivated to be the custodial parent of the children. The defendant is not pursuing custody for economic reasons or because he wants to "punish the plaintiff", contrary to her belief. The defendant is entirely motivated by what he considers to be in the best interest of the children.
13. Both parents are fit parents to have custody of the children.
14. The plaintiff has violated visitation rights. There has been a disregard of non-custodial parent-child contact and interference with telephone communication.
At the time of the decree of dissolution, the parties entered into a stipulation agreement. That agreement, which was incorporated in the decree of the court, provided that the plaintiff shall keep a written journal of the children's activities and progress on a weekly basis, more or less, and will forward said writing on at least a monthly basis to the defendant. It provided, further, that the defendant keep such a diary when the children are with him and forward the same to the plaintiff. The agreement further provided that the defendant has the right to receive and to request all medical, dental and school records and that the plaintiff shall notify the defendant within 24 hours of any major medical problem. The plaintiff has been found in contempt of this court's orders for her failure to abide by these orders. (Kavanewsky, J. on January 29, 1998.) As a sanction, Judge Kavanewsky ordered immediate compliance with all previous court orders. The evidence has demonstrated only a partial compliance by the plaintiff.
In entering the following orders, the court is not following the recommendation of the Family Relations report. One reason is that the report is now outdated. The second reason is that the children have changed their minds. The court does, however, CT Page 10912 follow the request of counsel for the children and finds that this is in the children's best interest.
The court enters the following orders:
1. The motions for modification are denied.
2. All of the judgment regarding custody shall remain as decreed, that is, that there shall be joint legal custody of the minor children with the children to reside principally with the plaintiff.
3. The provisions of the Agreement of the parties dated March 2, 1994, incorporated as a part of the judgment regarding visitation shall remain as decreed.
4. As provided in the judgment, the father shall have the right to converse with his children by phone at times which do not interfere with their preparation for school or bedtime.
5. The children shall be permitted to communicate by E-Mail with their father at any time and may call their father at any time on a collect call basis.
6. The parties shall make every effort to communicate with each other and shall treat each other in a respectful fashion with no hostility, anger and without the use of any profanity or indecent remarks.
7. Each party shall refrain from criticizing the other party to the children or in the children's presence. Neither party shall denigrate the other party in the children's presence or permit any other person to denigrate the other party in the children's presence.
A violation of any of the orders 2 through 7 inclusive will result in serious sanctions being imposed by the court.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE